817 P.2d 160

**Chester A. WALBORN, Plaintiff-respondent-cross appellant,**

v.

**Mary D. WALBORN, nka Mary Young, Defendant-appellant-cross respondent.**

**No. 18743.**

Supreme Court of Idaho,
Boise Term, February 1991.

Aug. 20, 1991.

Cosho, Humphrey, Greener & Welsh, Boise, for appellant. Stanley W. Welsh argued.

Hall & Friedly, Mountain Home, for respondent. Jay R. Friedly argued.

BAKES, Chief Justice.

Chester and Mary Walborn were married on April 2, 1971 and had one son, Jack, born in June, 1972. They separated in 1978 and ultimately divorced in May, 1980. Chester retired from the military shortly thereafter, in August, 1980. In the original May, 1980, divorce decree, Mary was awarded a portion of Chester's military retirement benefits. Chester received custody of their child, Jack, but Mary was not required to pay child support to Chester, as she was unemployed at the time and had no earned income to provide support, although she did receive substantial assets in the divorce.

Chester appealed the trial court's decision. On appeal, the district court initially ruled that the magistrate was correct in awarding Mary a portion of Chester's military retirement benefits. However, prior to the time the appeal before the district court became final, the United States Supreme Court decided *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which held that military retirement benefits were not subject to division under state community property laws. In light of *McCarty*, Chester requested the district court to reconsider its ruling. The district court amended its ruling and denied Mary any portion of Chester's retirement pay, based on *McCarty*. The district court then remanded the case to the magistrate court. A second appeal was then taken to the district court which, on February 1, 1982, affirmed the final judgment which denied Mary Walborn any interest in Chester's retirement pay.

Subsequently, in September of 1982, the United States Congress responded to *McCarty* by enacting the Uniform Services Former Spouses Protection Act (USFSPA), 10 U.S.C. § 1401 *et seq.*, which allowed the individual states to determine whether military retirement benefits were community or separate property. In 1987, the Idaho Legislature adopted I.C. § 32–713A,[1] which provided a one-year period, from July 1, 1987 to June 30, 1988, during which a spouse could file a motion to modify an otherwise final judgment to obtain a share of a former spouse's military retirement benefits which had been previously denied because of *McCarty*. In May, 1988, six years after the final judgment was rendered in this case, Mary filed a motion under I.C. § 32–713A for modification of the February 1, 1982, decree which had

---

1. **32–713A. Modification of divorce decree— Effective date [Repealed effective July 1, 1988.]**

—1. Community property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, may be modified to include a division of military retirement benefits payable on or after February 1, 1983, in a manner consistent with federal law and the law of this state as it existed before June 26, 1981, and as it has existed since February 1, 1983.

2. Modification of community property settlements, judgments, or decrees under this section may be granted whether or not the property settlement, judgment, or decree expressly reserved the pension issue for further determination, omitted any reference to a military pension, or assumed in any manner, implicitly or otherwise, that a pension divisible as community property before June 25, 1981, and on or after February 1, 1983, was not, as of the date of the property settlement, judgment, or decree became final, divisible community property.

denied her any of Chester's military retirement benefits, and asked "for a division of military retirement on or after February 1, 1983." When Mary filed her motion for retroactive modification of the divorce decree, Chester, who had not originally sought child support from Mary for their son Jack, brought a motion seeking an award of child support.

The magistrate court recognized that under I.C. § 32–713A, it had authority to reopen the prior decree and award a portion of Chester's retirement pay to Mary. Accordingly, he reopened the decree and made an award of a future portion of Chester's retirement benefits to Mary. However, the magistrate refused to make a retroactive award of a portion of Chester's military retirement pay, finding that Mary had taken no action for six years to assert that claim all the while Chester was providing the support for their minor child. The magistrate found that Chester had relied to his detriment on Mary's failure to assert any claim to his retirement benefits and, as a result, had not earlier asked the court for an award of child support, and therefore the defense of laches applied against Mary's claim. The magistrate further found that Mary had failed to contribute to the support of their minor child even though she had a legal obligation and adequate income and assets to do so. The court ruled that its refusal to make the award of retirement benefits retroactive was a "fair trade off" between her loss of a portion of the military retirement pay and her responsibility to pay child support. The magistrate court then concluded that, "The equities herein do not call for an award to defendant [Mary] of those military retirement benefits," and the court refused to award Mary any benefits back to February of 1983.

As to the award of a portion of the military retirement benefits for the future period beyond 1989, the trial court further concluded that Mary had an obligation to support their minor child, even to age twenty-one, if the child was continuing his formal education, and fixed the amount of child support at $234.31 per month, the exact amount which the court computed would be Mary's share of Chester's monthly disposable military retirement pay.[2] The magistrate court entered an order modifying the February 1, 1982, divorce decree, awarding Mary prospectively the $234.31 per month as her share of Chester's military retirement benefits and awarding Chester child support in the sum of $234.31 per month, commencing in May, 1989, and continuing "until said child reaches the age of majority; and if John M. Walborn continues his formal education after he reaches eighteen years of age, then such monthly support payments shall continue until he terminates his formal education or reaches twenty-one years of age, whichever occurs first." The court based its authority to extend child support to age twenty-one upon the provisions of I.C. § 7–1121. Finally, the magistrate ruled "that so long as each party owes the other pursuant to the foregoing paragraphs the monthly payment shall be set off against each other."

Mary Walborn appealed to the district court from the magistrate's amended judgment. The district court affirmed the magistrate's finding that it would be inequitable to modify the prior divorce decree retroactive to February 1, 1983, pointing out that the statute under which Mary was proceeding, I.C. § 32–713A, was not mandatory but discretionary, providing that "judgments, or decrees that become final on or after June 25, 1981, and before February 1, 1983, *may be modified* to include a division of military retirement benefits payable on or after February 1, 1983...." Recognizing that I.C. § 32–712 provides that the community property of a divorcing couple may be assigned by the trial court "in such proportion as the court, from all of the facts of the case and the condition of the parties deems just ...," the district court also affirmed the trial court's finding

---

2. The trial court computed Mary's share of Chester's retirement pay as being 4.5/29ths, or 15%, of $1,562.05, or $234.31, which would have been the monthly disposable retirement pay of Chester had he retired on March 20, 1980, as that pay is defined and computed under 10 U.S.C. § 1408(a)(4).

that the amount of the child support to which Chester would have been entitled over the nine-year period, when compared to the amount of military retirement benefits to which Mary would have been entitled, was, as the trial court found, "a fair trade off." From that record and findings, the district court concluded that, "The trial court's determination that the equities of the situation precluded a retroactive award is within its discretion."[3] The district court further upheld the magistrate's decision to offset Mary's prospective award of the $234.31 portion of Chester's military retirement pay against the award of $234.31 in child support to Chester from Mary.

On this appeal, we are asked to decide the following two issues: (1) did the magistrate correctly rule that the future portion of Chester's retirement pay to which Mary is now entitled could be offset by Mary's child support obligation, and (2) did the magistrate correctly deny Mary's request for a retroactive award of a percentage of Chester's retirement pay?

Our standard of review, when we are reviewing a district court decision, acting in its appellate capacity, is to review the record and the magistrate's decision independently of, but with due regard for, the district court's decision. *First Interstate Bank of Idaho, N.A. v. West,* 107 Idaho 851, 693 P.2d 1053 (1984); *Allen v. Shea,* 105 Idaho 31, 665 P.2d 1041 (1983); *Nicholls v. Blaser,* 102 Idaho 559, 633 P.2d 1137 (1981); *Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (1978).

I

The first issue is whether the magistrate court correctly offset the portion of Chester's military retirement pay by the same amount of child support which Mary was ordered to pay Chester in the March 30,

1989, modified judgment. Chester was not awarded child support in the original divorce decree. However, when Mary filed her motion to modify the original decree on May 19, 1988, pursuant to I.C. § 32–713A, Chester filed a motion to further modify the decree to require Mary to begin paying him child support. The magistrate granted both motions. Regarding the child support modification, the magistrate stated:

Concededly, plaintiff [Chester Walborn] is well able to raise the child on his own income alone. However, this Court is not prepared to excuse a parent from his or her obligation solely on the basis of the other parent's ability. This position is, I think, bolstered by the underlying philosophy enunciated by the Committee appointed by the Idaho Supreme Court to study and propose Child Support Guidelines.

That Committee supports the proposition that both parents share the legal responsibility for supporting their child; that responsibility should be divided in proportion to their resources; that rarely should child support be fixed at zero; and that custodial parents make direct expenditures on their child's behalf, both in time and economic resources.

Having considered the evidence submitted by the parties regarding their respective abilities and needs, it is the Court's opinion that for the period hereinafter stated, the defendant's [Mary's] obligation to pay child support to the plaintiff [Chester] be set off against the amount she would be entitled to receive from her share of plaintiff's military retirement benefits.

On appeal, the district court affirmed the magistrate's decision, concluding that since Mary was now earning $25,000 per year, was remarried to a man who earned approximately $47,000 per year, and would

---

**3.** The district court rejected as a matter of law the magistrate's other legal conclusion that Mary's claim was precluded by the defense of laches, relying on this Court's decision in *Curl v. Curl,* 115 Idaho 997, 772 P.2d 204 (1989). Idaho, like California, had held that final divorce decrees could not be reopened under I.R.C.P. 60(b) merely because of the change in the law

resulting from the congressional act responding to *McCarty.* Accordingly, the district court was correct in rejecting the magistrate court's finding that Mary was guilty of laches by failure to bring her motion earlier because Mary could not have successfully brought a proceeding to modify the February 1, 1982, decree before the enactment of I.C. § 32–713A.

now be receiving approximately 15% of Chester's military retirement pay, these changes constituted "a permanent, material and substantial change in the circumstances of the parties since the divorce," enabling Mary to support the parties' minor son. The district court concluded that, "Considered collectively, these changed conditions placed modification of the parties' child support obligations within the trial court's sound discretion." The district court noted that the Child Support Guidelines do not excuse either parent from providing support, even though the child was in a financial position to support himself. The court also held that the magistrate properly offset Mary's support obligations against her award of a percentage of Chester's military retirement pay.

### A.

■ We affirm the magistrate's 1989 decision to modify the February 1, 1982, divorce decree to award Mary a portion of Chester's retirement benefits. I.C. § 32–713A provides that prior final judgments and decrees "*may be modified*" to include military retirement benefits which were considered community property before *McCarty* was decided.[4] The statute gave the magistrate the discretion to modify the February 1, 1982, decree, even though it was final, and to award Mary a portion of Chester's retirement pay. Chester has not contested that prospective award by the trial court.

### B.

■ We also affirm the magistrate's 1989 decision to modify the decree to order Mary to pay child support to Chester. I.C. § 32–709 allows for modification of a child support award if the moving party has made "a showing of a substantial and material change of circumstances." The record supports the magistrate's finding that Chester has made a showing of change of circumstances. When the final divorce decree was entered, Mary had no

earned income, but she is now earning $25,-000 per year, plus is receiving a portion of Chester's military retirement benefits. Furthermore, she has remarried, and her husband is making approximately $47,000 per year. Chester's retirement benefits have been reduced substantially as a result of the 1989 modification giving Mary 15% of his retirement benefits. Accordingly, the magistrate did not err in holding that there was a change of circumstances and that Mary is now required to meet her legal obligation to help support their child.

### C.

■ We do not agree, however, with the magistrate's decision to offset this child support obligation against the retirement pay owed to Mary. While I.R.C.P. 54(b) provides that "[i]f any parties to an action are entitled to judgments against each other ... such judgments shall be offset against each other and a single judgment for the difference between the entitlements shall be entered in favor of the party entitled to the larger judgment," this offset provision contemplates a single judgment in which conflicting claims are offset and only the difference between the two judgments paid. However, where the situation involves payments into the future, which can vary and change, the offset provision in I.R.C.P. 54(b) is inappropriate because the court will continue to be involved on a constant basis. We therefore vacate the magistrate's ruling that the child support obligation be offset by the military retirement benefit award and remand the case to the magistrate court to make separate findings of fact and an award for Mary's share of the military retirement, and for Chester's entitlement to child support after considering the requirements of the Idaho Child Support Guidelines.

■ As to the magistrate court's determination that, by analogy, the provisions of I.C. § 7–1121 justify the award of child support until age twenty-one if the child, Jack, was pursuing his education, the rule

---

4. Neither party has raised, and accordingly we do not address, the constitutional implications of legislation authorizing the reopening, after the elapse of six years, final judgments and decrees in which parties have a vested property interest.

has always been, until the 1990 amendment to I.C. § 32–706, that a court cannot compel a spouse to support a child after the child has attained its majority. *Stanger v. Stanger*, 98 Idaho 725, 571 P.2d 1126 (1977); *Speer v. Quinlan*, 96 Idaho 119, 525 P.2d 314 (1974); *Embree v. Embree*, 85 Idaho 443, 380 P.2d 216 (1963); *Piatt v. Piatt*, 32 Idaho 407, 184 P. 470 (1919). The trial court's expansion by analogy of the provisions of I.C. § 7–1121 conflicts with the pre–1990 version of 32–706 and our prior cases, and therefore we reject it. Jack, the minor child, became eighteen years of age in June of 1990. The 1990 amendment to I.C. § 32–706, which specifically provides that child support obligations may continue only until a child is eighteen years of age or, if the child continues his education, until he reaches age nineteen, did not become effective until July 1, 1990. Therefore, we conclude that the 1990 amendment, which did not take effect until after Jack became an adult, was not applicable to Jack in this case, and does not support the trial court's order requiring child support beyond age eighteen.

## II

We now turn to the issue of whether the award of retirement benefits made in the modified decree of the trial court on February 1, 1989, should have been made retroactive to February 1, 1983. The trial court refused for two reasons. First, the trial court found in Finding of Fact 8 that, "The defendant's delay of over five years in seeking reinstatement of the award to her of a portion of the plaintiff's military retirement benefits was unreasonable and caused the plaintiff to rely on her inaction. Because of the detrimental reliance by the plaintiff, the plaintiff did not ask the court for an award of child support from the defendant because he was receiving all of his military retirement pay." The magistrate found the defendant to be guilty of laches.

Additionally, in Finding of Fact 10, the magistrate found that, "It would be *inequitable* to award the defendant 15% of the

military retirement pay received by the plaintiff since July 1, 1983, in light of the fact that the plaintiff has had the sole responsibility of supporting the parties' son for the past eight or nine years." (Emphasis added.)

On appeal, the district court affirmed the trial court, emphasizing that "I.C. § 32–713A authorizes, but does not require, the trial court to modify a final judgment such as the one in the instant case." Quoting from our recent decision in *Ross v. Ross*, 117 Idaho 548, 789 P.2d 1139 (1990), the district court emphasized:

> I.C. § 32–713A does not require that military retirement pay be divided equally between spouses on divorce. The statute only provides a method by which "[c]ommunity property settlements, judgments, or decrees that became final on or after June 25, 1981, and before February 1, 1983, *may be modified* to include a division of military retirement benefits payable on or after February 1, 1983, *in a manner consistent with* federal law and *the law of this state* as it existed before June 26, 1981, and as it has existed since February 1, 1983."

*Ross v. Ross*, 117 Idaho at 553, 789 P.2d at 1144 (emphasis in original).

Then recognizing that I.C. § 32–712 provides that community property shall be divided by the trial court "in such proportion as the court, from all the facts of the case and the condition of the parties, deems just . . .," the district court held that the magistrate did not abuse his discretion in refusing to reopen and retroactively modify the prior decree to February 1, 1983.

The first issue which we must resolve is whether I.C. § 32–713A grants the trial court discretion in determining whether to modify a decree. I.C. § 32–713A was enacted in 1987 by the Idaho legislature, and provides that "judgments, or decrees that become final on or after June 25, 1981, and before February 1, 1983, *may be modified* to include a division of military retirement benefits payable on or after February 1, 1983, . . . ."[5] Our cases have held that

---

5. See n. 1, p. 496, 817 P.2d p. 162, where the statute is set out in full.

the use of the word "may" rather than the word "shall" denotes discretion. *Saxton v. Gem County*, 113 Idaho 929, 750 P.2d 950 (1988); *Marks v. Vehlow*, 105 Idaho 560, 671 P.2d 473 (1983); *State v. Bunting Tractor*, 58 Idaho 617, 77 P.2d 464 (1938); *Frazier v. Neilsen & Co.*, 115 Idaho 739, 769 P.2d 1111 (1989) (Where a statute used the language "may be foreclosed by advertisement and sale ...," the court held that, "If the statute was intended to provide exclusive remedies, it would have used mandatory 'shall' language, rather than the permissive 'may.'"); *State v. Aubert*, 119 Idaho 868, 811 P.2d 44 (Ct.App.1991) ("... this statute creates a permissive option ('may ... request')...."). The foregoing cases amply demonstrate that the use of the phrase "may be modified" by the legislature, rather than word "shall," indicates that the trial court is to have discretion in determining whether to modify prior decrees.

■ Furthermore, the Idaho statute is a verbatim copy of the same statute enacted from an earlier statute in the State of California. Our research has revealed no other similar statute in any other state. Where the Idaho legislature adopts a statute identical to, or similar to the statute of another state, then we will presume that the statute was adopted along with the construction which the courts of the other jurisdiction had placed upon the statute prior to its adoption. In *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983), we stated:

> On March 20, 1971, our legislature enacted the next design immunity statute. 1971 Idaho Sess. Laws, ch. 150, § 4(7), p. 743, 746 (current version at I.C. § 6–904(8)). At that time it had available for its consideration the California and Illinois statutes. From the striking similarity of language between the Idaho and California statutes, *compare* I.C. § 6–904(8) *with* Cal.Gov't.Code § 830.6, we conclude that our legislature chose to enact a version more like the California statute. By 1971, the California Supreme Court had already construed its statute to provide for perpetual immunity. *Cabell v. State* [67 Cal.2d 150, 60

Cal.Rptr. 476, 430 P.2d 34 (1967)], *supra; Becker v. Johnston* [67 Cal.2d 163, 60 Cal.Rptr. 485, 430 P.2d 43 (1967)] *supra.* Later in *Baldwin v. State*, 6 Cal.3d 424, 99 Cal.Rptr. 145, 491 P.2d 1121 (1972), the California Supreme Court reversed its holding and held that changed conditions will dissolve the design immunity. Because the *Baldwin* decision which overruled *Cabell* and *Becker* came almost a year after our legislature acted, we choose to construe our statute as the California statute was construed at the time our legislature acted. Therefore, we hold that the legislature intended perpetual design immunity.

104 Idaho at 368–69, 659 P.2d at 122–23. In *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986), this Court stated:

> The Idaho legislature largely modeled the ITCA on the FTCA. *Dunbar v. United Steelworkers of America*, 100 Idaho 523, 530, 602 P.2d 21, 28 (1979). There is a presumption that when the legislature adopted the statute of another jurisdiction, it also adopted the prior construction of that statute by courts of the other jurisdiction. *Leliefeld v. Panorama Contractors, Inc.*, slip op., p. 5 [111 Idaho 897, 900, 728 P.2d 1306, 1309] (Sup.Ct. No. 15349, issued Jan. 16, 1986);....

110 Idaho at 472, n. 2, 716 P.2d at 1244, n. 2. In *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383 (1980), we stated:

> A statute which is adopted from another jurisdiction will be presumed to be adopted with the prior construction placed upon it by the courts of such other jurisdiction. [Citations omitted.] Therefore, in the absence of some other legislation which would clearly suggest a different result we should follow the interpretation which the Wisconsin Supreme Court had placed upon their comparative negligence statute prior to 1971.

102 Idaho at 5, 624 P.2d at 387. Not only is the Idaho statute, I.C. § 32–713A, identical to the prior Cal.Civ.Code § 5124, but the pre-statutory law in California and Idaho was also the same. Both courts had held that the enactment of the federal stat-

502

ute by itself did not authorize the revision by state courts of divorce decrees which had become final. *See Mueller v. Walker*, 167 Cal.App.3d 600, 213 Cal.Rptr. 442 (1985); *In re Marriage of Doud*, 181 Cal. App.3d 510, 226 Cal.Rptr. 423 (1986); *McBride v. McBride*, 112 Idaho 959, 739 P.2d 258 (1987); *Curl v. Curl, supra.*

Thus, based upon our prior cases of *Odenwalt v. Zaring, Leliefeld v. Johnson, Doe v. Durtschi* and *Nixon v. Triber*, 100 Idaho 198, 595 P.2d 1093 (1979), when the Idaho legislature enacted I.C. § 32–713A, modeled after the existing Cal.Civ.Code § 5124, it was adopted with the prior construction placed upon it by the courts of such other jurisdiction. *Odenwalt v. Zaring, supra.*

The California cases which had interpreted California's statute prior to its adoption in I.C. § 32–713A in 1987 held that the trial courts were vested with discretion in determining whether or not to modify an otherwise final decree to award a portion of a party's military retirement benefits which had been denied under *McCarty. In re Marriage of Downes*, 177 Cal.App.3d 205, 222 Cal.Rptr. 776, 779 (1986) ("Section 5124 gives the court authority to modify a dissolution decree to include a community property division of the service spouse's military pension; however, this authority is discretionary. The legislative history and the clear language of the statute indicate the court has discretion to apply equitable principles in reaching a decision whether to modify a dissolution decree entered during the window period...."); *In re Marriage of Doud*, 181 Cal.App.3d 510, 226 Cal.Rptr. 423, 429 (1986) ("Section 5124 only confers authority to modify to include a division of military retirement benefits. However, under section 5124 the trial court has discretion to deny such modification on equitable grounds."). The Supreme Court of California in *In re Marriage of Barnes*, 43 Cal.3d 1371, 240 Cal.Rptr. 855, 743 P.2d 915 (1987), stated that, "Section 5124 gives the trial court discretion to deny modification on equitable grounds under such circumstances. It would also allow the court to condition the grant of modification upon

agreement of the moving party to do equity." 240 Cal.Rptr. at 859, 743 P.2d at 919.

■ Accordingly, based upon our prior cases of *Odenwalt, Leliefeld* and *Doe v. Durtschi,* and the California cases of *Downes, Doud* and *Barnes,* we conclude that under I.C. § 32–713A the trial courts have "discretion to apply equitable principles in reaching a decision whether to modify a [divorce] decree entered during the window period" between the United States Supreme Court's decision in *McCarty v. McCarty,* and February 1, 1983, the effective date of the enactment of the Uniform Services Former Spouse's Protective Act (USFSPA), 10 U.S.C. §§ 1401 *et seq. In re Marriage of Downes, supra.*

Where trial courts are vested with discretion, our standard of review on appeal is to determine whether that discretion has been abused. *Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 803 P.2d 993 (1991). In making that determination, we stated in the *Sun Valley* case that:

[O]ur inquiry is: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

As to the first factor, both the magistrate court and the district court on appeal correctly perceived that the issue was one of discretion, based upon the wording of the statute which provides that former decrees *"may be modified."* It is also clear that the third factor in the *Sun Valley* case—"whether the trial court reached its decision by an exercise of reason"—was also met in this case. Both the magistrate court's findings of fact, and the district court's opinion, set out the reasoning applied by the trial court in reaching its decision.

■ It is the second requirement of the *Sun Valley* case, that the trial court act "consistently with the legal standards ap-

plicable to the specific choices available to it," which causes us concern. In this case the trial court gave two legal rationales for its decision, one of which was legally erroneous. The magistrate court concluded that Mary had taken no action for six years to assert any claim for a portion of Chester's military retirement benefits and was thereby guilty of laches and was thus precluded from asserting a retroactive claim for those benefits. However, as pointed out earlier in this opinion, *ante* at 498, 817 P.2d at 164 n. 3, under the Idaho cases of *McBride v. McBride, supra,* and *Curl v. Curl, supra,* the trial court's amended judgment, affirmed on appeal by the district court on February 1, 1982, became *res judicata* when the appeal time ran, and therefore there was no legal basis for Mary to seek a modification of the February 1, 1982, order until the enactment of I.C. § 32–713A in 1987. Accordingly, the magistrate's legal conclusion that Mary was precluded by laches from making a retroactive claim back to February 1, 1983, under the statute, was legally erroneous.[6]

■ However, the magistrate court also held that "it would be *inequitable* to award the defendant 15% of the military retirement pay received by the plaintiff since July 1, 1983, in light of the fact that the plaintiff has had the sole responsibility of supporting the parties' son for the past 8 or 9 years." The trial court found that "because of the detrimental reliance by the plaintiff, the plaintiff did not ask the court for an award of child support from the defendant because he was receiving all of his military retirement pay," even though the defendant had remarried and was gainfully employed making $25,000 per year. The magistrate then concluded that Mary's responsibility for child support was a "fair trade off" for her loss of a portion of the military retirement pay.

The California Court of Appeals in *Casas v. Thompson,* 42 Cal.3d 131, 228 Cal.Rptr. 33, 720 P.2d 921 (1986), recently held that a trial court could, in the exercise of its dis-

cretion, consider the offset of child support against a claim for a community interest in military retirement benefits:

[T]he court stressed that on remand "it is incumbent upon [Husband] to present extrinsic evidence to the trial court of any inequities that may follow in restoring to [Wife] the full amount of her community share in the retirement benefits received to date...." Thus, in determining whether to award these retroactive benefits, the court may consider any facts relevant to the fairness of such payments. Contrary to Virginia's assertions, the court here was not limited to tailoring the form of an award upon finding no laches. Rather, the court must apply "equitable principles," both defenses and general considerations, to determine whether to enforce her community share in the retirement benefits received, whether whole or in part, and then determine whether "tailoring" is appropriate. The [trial] court here found it would be inequitable to force Max to compensate Virginia for her past community share after he provided the sole support for their five children during their minority (except for one child during a limited time). Moreover, Virginia was not required to make any financial contribution to support four of the children and, during the period she had custody of one child, Max provided support. On this record, the court did not abuse its discretion.

228 Cal.Rptr. at 47, 720 P.2d at 934–35. We agree with the California court in *Casas v. Thompson* that the trial court could, in the exercise of its equitable jurisdiction, consider the fact that Chester had for nine years satisfied Mary's legal obligation to support their minor child.

However, because the trial court entertained the erroneous legal conclusion that Mary was guilty of laches in failing to bring a modification proceeding, we are uncertain whether the magistrate would have made the same equitable decision had

6. The district court correctly recognized this legal error and disregarded that reason in its

affirmation of the magistrate's decision.

**504**

he not found Mary to be guilty of laches. Since this matter is being remanded to the trial court under Part I of this opinion for a recalculation of the child support and retirement benefits, devoid of any offset, we also remand this retroactive issue to the trial court to reconsider its decision on whether or not to permit a retroactive modification of Mary's community property claim to a portion of Chester's military retirement benefits, without considering its prior erroneous conclusion that Mary was guilty of laches. The trial court should exercise its equitable discretion and then make appropriate findings of fact and conclusions of law to supports its decision. *Sun Valley v. Idaho Power Co., supra; Ross v. Ross, supra.*

Reversed and remanded for further proceedings. No costs or attorney fees on appeal.

BISTLINE, JOHNSON and BOYLE, JJ., concur.

McDEVITT, J., concurs in the result.