894 P.2d 118

**Ritchard S. NOBLE, Plaintiff–Appellant,**

v.

**Mary Hudson FISHER, Defendant–Respondent.**

No. 20745.

Supreme Court of Idaho,
Boise, February 1994 Term.

April 17, 1995.

Ritchard S. Noble, Boise, pro se.

Wilson, Carnahan & McColl, Boise, for respondent. Debrha Jo Carnahan, argued.

SILAK, Justice.

In this appeal, Ritchard S. Noble challenges the magistrate's decision to increase his child support obligation. Noble contends that the magistrate should not have considered the additional income he was receiving from a second job which he began working after the divorce decree was entered in calculating his child support obligation under the Idaho Child Support Guidelines. Also at is-

sue is whether a provision of the parties' Child Custody and Property Settlement Agreement, which provided that Noble would pay one-half the education expenses if his two daughters chose to attend college, is valid and enforceable by the court in this proceeding to modify the divorce decree. For the reasons set forth below, we affirm the magistrate's order increasing Noble's child support obligation, and we reverse the magistrate's judgment declaring Noble's agreement to pay his children's college expenses void, but affirm that portion of the judgment which held that the agreement could not be enforced through an action on the divorce decree.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Ritchard S. Noble and Mary Hudson Fisher were married in 1975. Two daughters were born of the marriage: Angela in 1976, and Amy in 1978. During and after the marriage, Noble was employed full-time as a police officer. The couple divorced in 1989. At the time of their divorce, Noble and Fisher entered into a Child Custody and Property Settlement Agreement (Settlement Agreement). The decree of divorce incorporated the terms of the Settlement Agreement as follows:

> [T]he Property Settlement Agreement between the parties, a copy of which is attached hereto as Exhibit "A", is hereby approved, ratified, confirmed, merged, and made a part hereof as if fully set forth herein in full and each party is hereby ordered to comply with the terms hereof.

The divorce decree ordered Noble to pay child support in the amount of $250.00 per month per child until such time as the child reaches the age of majority or is emancipated, as provided by the Settlement Agreement. The "Child Support" section of the Settlement Agreement also contained a provision by which Noble agreed to pay one-half of the college education expenses of his two daughters should either or both daughters choose to attend college immediately after high school.

While married to Mary Hudson, Noble obtained a law degree. In 1991, following the divorce, Noble began working part-time as an attorney in addition to his full-time job as a police officer.

In April 1992, Fisher moved the magistrate court to increase Noble's child support obligation. At the evidentiary hearing on Fisher's motion, Noble moved the court to declare that the provision of the Settlement Agreement by which he agreed to pay for one-half of his children's college education was void and unenforceable because it required him to provide "child support" for his children after they reached majority. Based upon the evidence presented at the hearing, the magistrate determined that a substantial and material change in circumstances had occurred since the original decree was entered which justified increasing Noble's child support obligation. The magistrate found these changes consisted of: (1) a significant increase in Noble's income since the divorce due to a salary increase in his primary job as a police officer, and his beginning the practice of law as a part-time second job; (2) increased costs of raising the children; and (3) adoption of the Idaho Child Support Guidelines (Guidelines) since the time of the divorce.

In determining Noble's child support obligation under the Guidelines, the magistrate considered Noble's income from his second job to be part of his gross income, and increased his child support payments from $500.00 to $752.00 per month. The magistrate also determined that the provision of the parties' Settlement Agreement wherein Noble agreed to pay for half of his daughters' college educations was void, and ordered that Noble was not required to pay any support for the children once they either graduated from high school or turned nineteen, whichever occurred sooner. The magistrate determined that Fisher was the prevailing party, and awarded her attorney fees. After Noble filed a Motion for Clarification, Reconsideration, and Amendment, the magistrate reduced the monthly child support payments to $745.00 to rectify a mathematical error.

Noble subsequently appealed to the district court asserting that the income from his second job should not have been considered in calculating his child support obligation, absent compelling reasons related to the needs of the children. Noble also appealed the magistrate's award of attorney fees to Fisher. Fisher cross appealed from that portion of the magistrate's decision which determined that the college education provision in the Settlement Agreement was void. The district court affirmed the magistrate's consideration of Noble's second-job income in calculating his child support obligation, as well as the award of attorney fees to Fisher, but reversed the magistrate's determination that the college education provision was void. Noble then appealed to this Court.

## II.

### ISSUES ON APPEAL

1. Whether it was proper, under the Guidelines, for the magistrate to consider income from Noble's second job in calculating his child support obligation.
2. Whether Noble can be required to pay for his children's college expenses beyond the age of nineteen.
3. Whether Fisher was properly awarded her attorney fees in the lower court proceedings.

## III.

### ANALYSIS

### A. THE MAGISTRATE CORRECTLY CONSIDERED THE INCOME FROM NOBLE'S SECOND JOB IN COMPUTING HIS CHILD SUPPORT OBLIGATION.

■ We first note our standard of review. Where, as here, the issues presented were first decided in the magistrate division and then presented to the district court on appeal, we review the magistrate's decision independent of, but with due regard for, the district court's appellate decision. *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–3 (1993). An order of child support may be modified "only upon a showing of a sub-

stantial and material change of circumstances." I.C. § 32–709; *Ireland v. Ireland,* 123 Idaho at 959, 855 P.2d at 42–43. The decision whether to modify an order of child support because of a substantial and material change of circumstances is within the sound discretion of the trial court and will not be disturbed on appeal unless a manifest abuse of discretion is shown. *Id.* Under the abuse-of-discretion standard, the sequence of our inquiry is:

(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.

*Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Noble has not challenged any of the factual findings underlying the magistrate's decision. Rather, he contends that the trial court failed to correctly apply the legal standards applicable to the determination of his child support obligation. Noble contends that under the Guidelines, the trial court should not have considered his part-time second job in calculating his child support obligation, absent compelling reasons related to the needs of his children. We disagree.

■ The Guidelines are premised on the basic principle that both parents should share legal responsibility for supporting their child or children "in proportion to their Guidelines Income." I.R.C.P. 6(c)(6) § 4(a). The Guidelines define the term "Guidelines Income" as the gross income of the parents and, if applicable, in-kind benefits and/or potential income, less certain adjustments. The existence of in-kind benefits and potential income, as well as the applicability of the various adjustments, are not at issue in this appeal. What is at issue is whether Noble's income from his second job should be included in his gross income for the purpose of determining the amount of his proportionate child support obligation.

■ The Guidelines define "gross income" as follows:

(a) Gross Income Defined. (1) Gross income. Gross income includes *income from any source,* and includes, but is not limited to, income from *salaries, wages,* commissions, bonuses, dividends, pensions, interest, trust income, annuities, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, alimony, maintenance, any veteran's benefits received, education grants, scholarships, and other financial aid. The court may consider when and for what duration the receipt of funds from gifts, prizes, net proceeds from property sales, severance pay, and judgments will be considered as available for child support. Benefits received from public assistance programs for the parent shall be included except in cases of extraordinary hardship.

I.C.S.G. § 6(a)(1) (emphasis added). We hold that income from a second job is within the scope of "gross income" as defined by this section. The definition unambiguously states the general rule that gross income, for the purpose of determining income available to a parent to satisfy his or her child support obligation, "includes income from any source." To illustrate the expansive scope of the term gross income, the section provides an extensive, although not necessarily exhaustive, list of income types considered to be gross income. The last two sentences of this subsection, as well as subsections 6(a)(2) & (3) of the definition, provide a few specific limitations on the general rule that gross income includes income from any source. The last two sentences of § 6(a)(1) state that the extent to which income from gifts, prizes, net proceeds from property sales, severance pay, and judgments will be considered as available for child support, is within the discretion of the judge, and that income received from public assistance programs may not be considered in cases of extraordinary hardship. Subsection 6(a)(2) explains the extent to which rents and business income are considered "gross income," excluding gross receipts which are expended on ordinary and necessary business expenses, one half of self-employment social security tax paid on the business income, and the value of the straight line depreciation of business assets.

Subsection 6(a)(3) explains that gross income shall not ordinarily include the parent's community property interest in the financial resources or obligations of a spouse who is not a parent of the child, unless compelling reasons exist.

There is nothing in the Guidelines' definition of gross income from which we could infer that income from second jobs is not to be included within the calculation of gross income. To the contrary, the expansive general rule that gross income "includes income from any source," followed by an extensive list of income sources demonstrating the broad scope of the definition, with a few specifically enumerated limitations, leads us to conclude that the income earned by a parent from a second job is ordinarily within the definition of gross income. Certainly, where the definition expressly includes wages and salaries, as well as such income sources as social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, veteran's benefits, education grants, gifts, prizes, judgments, and public assistance benefits, as gross income available for child support, *the income earned by a parent in a second job is also intended to be income available for child support.* Given the specificity of the definition of gross income, had such a common source of income as earnings from a second job not been intended to be available for child support, the rule would have so stated.

■ Noble cites child support guidelines as adopted or amended in other jurisdictions to support his argument that income from a parent's second job should not be considered in calculating that parent's child support obligation. However, the fact that other jurisdictions have decided to exclude second job income from calculations of child support obligations does not authorize such a rule in this State where section 6(a)(1) of our Guidelines clearly and unambiguously provides that gross income "includes income from any source." Because this provision is unambiguous, it must be interpreted in accordance with its plain language and courts must follow it as promulgated. *Cf. State v. Wiedmeier,* 121 Idaho 189, 191, 824 P.2d 120, 122

(1992) (applying rule to an unambiguous statute). Accordingly, we hold that the district court did not abuse its discretion in considering Noble's income from his second job in determining his child support obligation.

## B. THE MAGISTRATE CORRECTLY DETERMINED NOT TO ORDER THE FATHER TO PAY POST–MAJORITY CHILD SUPPORT.

The magistrate ruled that paragraph III of the Settlement Agreement, entitled "Child Support", was merged into the divorce decree and therefore entirely modifiable. Paragraph III contains the college education support provision. The magistrate then ruled that Noble was not required to pay for child care expenses for the children beyond their high school education because he was without power to order support beyond that age. The magistrate thus ordered in his Amended Judgment that any provisions in the Settlement Agreement pertaining to support of the children after they graduate from high school or reach the age of nineteen, whichever is sooner, are void.

The district court reversed the magistrate, ruling that where the parties have agreed that the child support obligation would be extended beyond the age of nineteen, and this agreement is merged into a divorce decree, the trial court has the authority to enforce that agreement as a part of its decree and may at a later time modify the agreement under the same standards that are applicable to other provisions relating to child support. Otherwise, the district court ruled on appeal, a court cannot compel a parent to support a child after the child has reached the age of nineteen.

It is well established in Idaho that in a proceeding for divorce or child support, a court can compel a parent to support a child only until a child is eighteen years of age or until he or she reaches the age of nineteen if the child continues to pursue formal education. I.C. § 32–706(B); *Walborn v. Walborn*, 120 Idaho 494, 499–500, 817 P.2d 160, 165–66 (1991). The provision requiring Noble to pay for half of his children's college education, found in the section of the Settlement Agreement entitled "Child Support," was a provision requiring post-majority "child support." As noted above, the Settlement Agreement was merged into the divorce decree. The decision of the magistrate court was therefore correct in ordering Noble to pay child support in accordance with I.C. § 32–706(B). Because of the merger of the Settlement Agreement in the decree, the Agreement, including that of post-majority child support, was no longer enforceable as a separate contractual obligation. *Compare Spencer–Steed v. Spencer*, 115 Idaho 338, 343–44, 766 P.2d 1219, 1224–25 (1988) (where property settlement agreement specifically provided that it was integrated and would not be merged, wife could maintain separate contract action to enforce support provision for post-majority child support and alimony). The children, however, as third-party beneficiaries of the Agreement, would be permitted to bring an action for enforcement of Noble's contractual obligation to them for college tuition and book expenses as specified in the contract, as their rights, unlike Fisher's, are not enforceable only through the decree of divorce. *See generally Bainbridge v. Bainbridge*, 75 Idaho 13, 23–24, 265 P.2d 662, 669 (1954).

The decision of the magistrate concerning post-majority child support is therefore affirmed.

## C. NO REVERSIBLE ERROR WAS COMMITTED BY THE LOWER COURTS IN AWARDING ATTORNEY FEES TO FISHER.

In its amended judgment the magistrate awarded Fisher attorney fees, stating:

> This Court has weighed the numbers and complexity of the issues and finds that the Defendant is the prevailing party, although Plaintiff prevailed on some issues. It was clear that an increase in child support was due to Defendant. After reviewing the file, the Court determines that $500.00 is warranted in view of the amount of discovery, the issues addressed and which party prevailed on each.

The magistrate did not identify any statute or contractual provision on which the award of attorney fees was based. Nor does the

record before us indicate that Fisher was awarded attorney fees on appeal to the district court, much less the district court's reasoning or legal basis for awarding attorney fees. Fisher asserts that the awards of attorney fees at the trial court level and on appeal to the district court were proper under I.C. § 12–121 and paragraph XIV of the parties' Settlement Agreement. Noble contends that I.C. § 32–704 is the appropriate law to apply to the issue of attorney fees in a domestic relations matter, and in any case, an award of attorney fees on either basis is improper because the magistrate erred in finding that Fisher was the prevailing party.

■ Neither the magistrate's award of attorney fees to Fisher nor the district court's award on appeal can be sustained on review under I.C. § 12–121. That statute provides that in any civil action the court may award reasonable attorney fees to the prevailing party. However, the statute has been supplemented by I.R.C.P. 54(e)(1), which provides that "attorney fees under section 12–121, Idaho Code, may be awarded by the court only when it finds, from the facts presented to it, that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1); *see also Edwards v. Donart*, 116 Idaho 687, 688, 778 P.2d 809, 810, (1989). In this case, neither the magistrate nor the district court made a finding that Noble's defense or cross-motion to modify were brought, pursued or defended frivolously, unreasonably or without foundation. Accordingly, the awards of attorney fees to Fisher cannot rest on I.C. § 12–121.

■ Nor can the award of attorney fees to Fisher be based on I.C. § 32–704. Subsection 2 of that statute provides:

2. The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32–705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may

order that the amount be paid directly to the attorney, who may enforce the order in his name.

I.C. § 32–704(2). Section 32–705 sets forth a number of factors which the court must consider in determining whether to order a party to pay the costs and fees of the other party in a domestic relations matter. Section 32–704(2) and prior decisions of this Court hold that in order to make an award of costs and attorney fees under section 32–704, the court must first consider and cite the factors listed in section 32–705 in its decision. *Smith v. Smith*, 124 Idaho 431, 442, 860 P.2d 634, 645 (1993). Unless the court's decision cites the legislative factors and demonstrates that such factors were considered, the award of attorney fees is subject to being reversed and remanded. *Id.; see also Bailey v. Bailey*, 107 Idaho 324, 329, 689 P.2d 216, 221 (Ct.App.1984) (trial judges in divorce cases should state reasons for their decisions on attorney fee issues, which statement should at least note existence of legislative guidelines and identify those factors weighed in reaching a decision). Because the magistrate did not cite the legislative factors set forth in section 32–705 in awarding Fisher her attorney fees, or mention that any of the factors were considered in making the decision, the award of attorney fees cannot be upheld under I.C. § 32–704.

■ The only other basis alleged for the award of attorney fees is the attorney fee provision in the parties' Settlement Agreement. That provision states:

If any action is instituted under the terms of this Agreement, then the losing party agrees to pay the prevailing party his or her costs and reasonable attorney's fees as may be determined by the Court should said dispute be litigated or as may be determined by mutual agreement of the parties and their legal representatives if any dispute in connection with this Agreement is settled by counsel without litigation.

This provision of the Settlement Agreement was merged into the divorce decree and is valid and enforceable as such. Noble asserts that the present action was not "instituted under the terms of this Agreement", and

therefore this provision does not apply to authorize attorney fees in this case. He contends that this action was not a dispute over the terms of the Settlement Agreement as written, but rather over whether the parties should be allowed to modify the terms of the Agreement. We do not read the meaning of this provision so narrowly. The clear and unambiguous import of this provision is that if the parties subsequently dispute the terms of the Settlement Agreement—their applicability, modifiability, enforceability, or meaning—then the party who prevails in the dispute is entitled to have his or her attorney fees paid by the losing party. The attorney fees provision uses broad language in referring to "any dispute in connection with this Agreement." The issues raised in this case clearly pertained to the applicability, modifiability and enforceability of various child support terms of the Settlement Agreement. Accordingly, under paragraph XIV of the Settlement Agreement, the prevailing party is entitled to attorney fees paid by the nonprevailing party.

The determination as to the prevailing party in an action is a matter committed to the sound discretion of the trial court, and the trial court's determination will not be disturbed absent an abuse of that discretion. I.R.C.P. 54(d)(1)(B); *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho 565, 568, 836 P.2d 511, 514 (1992). Having reviewed the record in this case, we cannot say that the magistrate abused his discretion in determining that Fisher was the prevailing party at the trial level. Although Fisher did not receive as much of an increase in child support as she requested, Noble contended that no increase should be granted, and Fisher did obtain a $245 per month increase in Noble's child support obligation. As to Fisher's award of attorney fees at the district court appellate level, Noble has failed to present us with any record of the district court's decision on attorney fees from which we could find error, and we will not presume error on appeal. Accordingly, we affirm the award of attorney fees to Fisher under paragraph XIV of the parties' Settlement Agreement, both at the trial and the appellate levels.

## IV.

## CONCLUSION

We hold that the magistrate did not err in considering the income from Noble's second job in calculating his child support obligation under the Guidelines. We further hold that the magistrate did not err in determining that Noble would not be ordered to pay child support beyond that required by I.C. § 32–706(B). Finally, we affirm the award of attorney fees to Fisher by the magistrate at the trial level and the district court on appeal under paragraph XIV of the parties' Settlement Agreement.

Costs and attorney fees on appeal to respondent in connection with issues III A and C, and to appellant in connection with issue III B, pursuant to I.A.R. 40 and paragraph XIV of the parties' Settlement Agreement.

McDEVITT, C.J., and JOHNSON and TROUT, JJ., concur.

BISTLINE, J., sat but did not participate in decision.