141 P.3d 1086

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Scott WATKINS, Real Party in Interest–Appellant.**

No. 31700.

Supreme Court of Idaho, Boise, April 2006 Term.

July 31, 2006.

Wiebe & Fouser, PA, Caldwell, for appellant. Tyrel D. Stevenson argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHROEDER, Chief Justice.

Scott Watkins appeals from an order of the magistrate court that he go to jail for refusing to take a drug test as part of his son's juvenile probation terms.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tyler Watkins, a juvenile, was charged under the Juvenile Corrections Act and admitted to charges of unlawful entry, disturbing the peace, curfew violation, and being under the influence of a controlled substance. His father, Scott Watkins (Watkins), appeared in the proceedings and signed an "Acknowledgment of Rights Form" which included the following provisions:

4. The juvenile and the juvenile's parent ... may be required to sign a probationary contract which provides that a violation or breach of the terms and conditions of the contract shall result in liability of the juvenile's parent ... for a specific sum not in excess of one thousand dollars ($1000) in addition to any other fines, penalties, or sanctions as provided by law.

9. The judge may make an additional order setting forth reasonable conditions to be complied with by the juvenile, his/her parent ... which may include *but are not limited to* ... requirements to be observed by the parent ...

10. The judge may make any other reasonable order which is in the best interest of the juvenile or is required for the protection of the public.

11. The willful failure of a parent ... to comply with orders of the court may result in the violator being punished by fine and/or jail.

After Tyler admitted to the charges, a presentence/social history investigation was ordered and the court set the matter for sentencing. The report revealed that Watkins admitted to recent illegal drug use and to a history of drug use. The juvenile probation officer preparing the report recommended that Tyler be placed on probation and that the court order his father to sign a "parental contract" with certain conditions, including the condition that he, the father, would submit to random drug testing analysis.

At sentencing the court placed Tyler on probation and ordered, among other conditions, that Watkins sign a "parental contract." Watkins was presented with a proposed "parental contract" which included a number of conditions dealing with his responsibility to attend counseling, supervise Tyler, and generally cooperate with the juvenile probation officer. It also included the provision "[t]he parent, Scott Watkins, shall submit to random drug analysis tests." In addition, the following language appeared in capital letters at the bottom of the listed conditions:

IF THE JUVENILE OR THE JUVENILE'S PARENT ... VIOLATES OR BREACHES THE TERMS AND CONDITIONS OF THIS PROBATIONARY CONTRACT, THE JUVENILE'S PARENT ... SHALL BE LIABLE TO THE COURT FOR A SPECIFIC MONETARY SUM NOT IN EXCESS OF ONE THOUSAND DOLLARS ($1000) FOR THE BREACH OF CONTRACT. THE COURT MAY ALSO ORDER THE JUVENILE'S PARENT ... TO ATTEND PARENTING CLASSES OR UNDERGO OTHER TREATMENT OR COUNSELING.

The following language appeared just above the space provided for the juvenile's and parent's signatures on the last page of the contract: "We understand, agree, accept and will abide by the terms and conditions of the above probationary contract and the order of the Court." Nowhere on the proposed "parental contract" was jail mentioned as a possible sanction against the juvenile's parent.

Watkins informed the court that he agreed to all the terms of the "contract" except for the requirement that he submit to random drug testing, which he stated was a breach of his privacy. He refused to sign the parental contract without advice of counsel. The deputy prosecuting attorney in attendance took the position that Watkins was entitled to refuse to sign the contract, but that his refusal would result in the State changing its sentencing recommendation regarding Tyler.

The hearing was continued to allow Watkins to obtain legal advice, and on July 31, 2003, the parties reappeared in court on the issue. Watkins questioned whether the State was providing any consideration on its side of the contract, and the judge indicated that he was not going to provide Watkins with legal advice. Watkins further questioned the $1,000.00 possible penalty for violation of the contract on his part. At that point, the court indicated that either Watkins would sign the contract or the court would order him held in jail until such time as he agreed to sign the parental contract; Watkins signed the contract. Thereafter, the court ordered Watkins to immediately submit to a drug test at the juvenile probation department pursuant to the terms of the contract.

Watkins failed to submit to the drug test as ordered by the court and an order to show cause was issued requiring Watkins to show cause why he should not be held in contempt for failure to submit to the drug test. Watkins appeared without counsel and admitted that he refused to take the drug test. He then requested court-appointed counsel, which the court summarily denied. The court immediately found him in contempt for willful violation of its order and sentenced him to five days in jail, to commence immediately, and to submit to a drug test upon booking at the jail. The court set an appeal bond of $10,000.00.

The following day, Watkins was returned to court, apparently still in custody, at which time the court reconsidered the request for court-appointed counsel. The court appointed the public defender and released Watkins from jail, giving him credit for one day served, and continued the show cause hearing for a later date to allow Watkins to appear with counsel. Watkins moved to set

aside the contempt order. The court denied the motion. Watkins appealed. The court stayed further execution of the sentence pending appeal.

On appeal the district court found the magistrate court had the statutory and constitutional authority to compel Watkins to sign the "parental contract" under the threat of civil contempt sanctions, including jail. The district court also found that the magistrate court has the authority to sanction willful violation with jail if such a sanction is included in the parental contract. The parental contract in this case did not provide jail as a remedy for a violation or breach of the contract. Therefore, the district court remanded the case for further proceedings consistent with its order, which it stated should be limited to the sentencing alternatives listed in the parental contract. Watkins appealed to this Court, maintaining that the magistrate court did not have the authority to order him to sign the probationary contract or to order him to consent to drug testing under the threat of jail. The State maintains Watkins failed to timely appeal and that the issues are moot or, in the alternative, the Court should affirm based upon the reasoning of the district court.

## II.

### STANDARD OF REVIEW

■ "Our standard of review, when we are reviewing a district court decision, acting in its appellate capacity, is to review the record and the magistrate's decision independently of, but with due regard for, the district court's decision." *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002) (quoting *Walborn v. Walborn*, 120 Idaho 494, 498, 817 P.2d 160, 164 (1991)). The standard of review for questions of law is one of free review. *Electrical Wholesale Supply Co., v. Nielson*, 136 Idaho 814, 825, 41 P.3d 242, 253 (2001).

## III.

### THE ISSUES ARE NOT MOOT

■ The State argues that Watkins' appeal should be dismissed because the issues are moot, asserting that he has effectively been granted the relief he seeks since the parental contract expired on April 17, 2004, and he is relieved of any obligations to comply with the terms of the parental contract. However, if the district court decision is left unaltered, Watkins is still subject to a remand for contempt sanctions. The issues are not moot.

## IV.

### THE APPEAL TO THIS COURT IS TIMELY

The State contends this Court should decline to address the issues raised by Watkins on the basis that the appeal is untimely and in violation of I.A.R. 14(a), which provides that an appeal must be filed within 42 days of the order appealed. The district court's memorandum decision from which Watkins appealed was filed on February 23, 2005. Watkins' Notice of Appeal was filed on March 17, 2005, well within the time allowed. The timeliness of the appeal from the magistrate court to the district court was not raised in the district court and will not be addressed by this Court.

## V.

### THE MAGISTRATE COURT ERRED IN IMPOSING SANCTIONS FOR CONTEMPT

■ Idaho Code § 20–522 provides, "the court shall have jurisdiction and authority to have the juvenile and [his parent] sign a probationary contract with the court containing terms and conditions that the juvenile and [parent] must adhere to as a condition of the juvenile's probation." The magistrate judge treated I.C. § 20–522 as providing a method for compelling the acceptance by Watkins of mandatory drug testing, ordering Watkins to sign the contract or go to jail. Acceptance of that interpretation of I.C. § 20–522 would require the Court to conclude that the term "contract" in the statute means something different from its traditional meaning. While one may be compelled to perform the conditions of a valid contract, compulsion to enter a contract under the threat of jail is not within the contemplation of contract law. It must be assumed that the legislature understood the concept of voluntary commitment to an agreement when it used the term "contract" in I.C. § 20–522. It appears that the legislature intended the

parental contract to be one of the rehabilitative tools that might be used by the courts in dealing with juvenile offenders and their parents. This makes a good deal of sense, since voluntary involvement of a parent in the rehabilitation of his or her child likely has a salutary effect. If the parent who enters into such a contract violates the terms of that contract, the court may impose the sanctions provided in I.C. § 20–522.

Not all parents are likely to voluntarily enter into contracts that may subject them to losses of personal privacy and the sanctions of I.C. § 20–522. The legislature was doubtless cognizant of that reality and equipped the courts dealing with juvenile offenders with authority in I.C. § 20–520 that is not based on consent. See, for example, I.C. § 20–520(1)(i): "In support of an order under the provisions of this section, the court may make an additional order setting forth reasonable conditions to be complied with by the parents ... including, but not limited to, restrictions on visitation by the parents or one (1) parent, restrictions on the juvenile's associates, occupation and other activities, and requirements to be observed by the parents, guardian or custodian."

Whether drug testing falls within the authority of the magistrate court in dealing with Watkins pursuant to I.C. § 20–520 is not before this court, because the magistrate court did not pursue that route. It ordered Watkins to sign a contract under the compulsion of jail. There was no valid contract. No sanctions could be imposed on Watkins for failure to comply with the provisions of the invalid contract.

## VI.

### CONCLUSION

The decision of the magistrate court finding Watkins in contempt for failure to comply with conditions of the parental contract is reversed because the parental contract was invalid.

Justices TROUT, EISMANN, BURDICK and JONES concur.