IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 39789

| | | |
|---|---|---|
| **PEDRO A. PELAYO,** | ) | |
| | ) | |
| | ) | **Idaho Falls, May 2013 Term** |
| **Plaintiff-Appellant,** | ) | |
| | ) | |
| v. | ) | **2013 Opinion No. 76** |
| | ) | |
| | ) | **Filed: June 21, 2013** |
| **BERTHA ALICIA PELAYO,** | ) | |
| | ) | |
| **Defendant-Respondent.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| ———————————————— | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

The decision of the district court is <u>affirmed</u>.

Jonathan W. Harris, Blackfoot, for appellant.

David N. Parmenter, Blackfoot, for respondent.

————————————

J. JONES, Justice.

Pedro Pelayo appealed certain rulings of the magistrate court in his divorce action, including the award of spousal maintenance to his wife, Bertha. The district court upheld the challenged rulings and Pedro appealed to this Court.

## I.
## FACTUAL AND PROCEDURAL HISTORY

Pedro and Bertha were married in Mexico on May 7, 1984. During the course of their marriage they had three children. However, at the time of their divorce proceedings, only one of their children, A.P., born in 1992, was a minor. While married, Pedro and Bertha acquired three pieces of real property: (1) a home in Blackfoot, located on Airport Road (the Airport Road Property); (2) land on the Fort Hall Indian Reservation (the Fort Hall Property); and, (3) property purchased in Mexico. Their primary residence before the divorce was the Airport Road Property.

On June 18, 2009, Pedro filed a complaint for divorce, alleging that irreconcilable differences prevented continuation of the marriage. Bertha filed a counterclaim along with her

answer, seeking divorce on grounds of adultery.

Prior to trial, the parties entered into a stipulation. The stipulation provided in relevant part: (1) Bertha would have actual physical custody of A.P.; (2) Pedro would take the Fort Hall Property with an assigned value of $125,000; (3) the Airport Road Property would be listed and sold as soon as possible, but that in the meantime Bertha could continue to reside there; (4) Pedro would continue to make payments on the Airport Road Property until it sold; and (5) after the sale of the Airport Road Property, Pedro would pay Bertha $62,500, representing her one-half interest in the Fort Hall Property.

The magistrate court accepted the parties' stipulation and the matter proceeded to a court trial. On May 18, 2010, the magistrate court issued its Memorandum Decision and Judgment Regarding Divorce, Custody and Child Support. The Memorandum Decision provides that: (1) irreconcilable differences warranted granting the divorce; (2) Bertha is entitled to the Mexico Property without an offset; (3) Pedro's average gross income is $49,000[1] and his monthly child support payment is $558; (4) Pedro must pay Bertha $800 per month in spousal maintenance for seven years and $400 per month thereafter until Bertha is age sixty-two (six additional years); and (5) Pedro must pay a portion of Bertha's attorney fees, not to exceed $2,500.

The Memorandum Decision noted that evidence was provided by Bertha that "gave the court high suspicion of adulterous behavior on the part of Pedro," and that "neither party had been particularly kind to one another for a significant period." Ultimately, the magistrate court found that "the marriage [was] irretrievably broken and the differences between the parties appear as the primary 'cause'" for the divorce. Accordingly, on September 1, 2010, the magistrate court issued a Decree of Divorce, citing irreconcilable differences as the grounds for divorce.

Pedro appealed the magistrate's decision to district court. In his appeal brief, Pedro argued that the magistrate court erred by: (1) awarding the Mexico Property to Bertha without an offset or credit in his favor; (2) considering his alleged adultery in making a spousal maintenance award; (3) awarding Bertha spousal maintenance that was punitive and amounted to permanent support; (4) setting his annual income for the purposes of child support at $49,000; and (5) awarding Bertha attorney fees.

The district court held oral argument on November 28, 2011, and issued its Decision and

---

[1] Although the magistrate court found that Pedro's average gross income was approximately $49,000.00, the court set his income for the purpose of calculating child support payments at $45,000 after finding that $4,000 of Pedro's income was for voluntary overtime and not to be included in calculating child support. *See infra* Part C.

Order on Appeal on January 23, 2012. The district court affirmed the magistrate court on all counts except its disposition of the Mexico Property, which is not at issue in this appeal. Following the decision of the district court, Pedro timely filed a notice of appeal to this Court.

## II.
## ISSUES ON REVIEW

I.      Did the district court abuse its discretion by affirming the magistrate's award of spousal maintenance to Bertha?

II.     Did the district court err in affirming the magistrate court's finding that Pedro's annual income was $49,000 for the purposes of calculating his child support payments?

III.    Did the district court abuse its discretion by affirming the magistrate court's award of attorney fees to Bertha under I.C. § 32-704(3)?

IV.     Is either party entitled to attorney fees on appeal?

## III.
## DISCUSSION

### A.      Standard of Review.

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012) (quoting *Losser v. Bradstreet,* 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). Thus, this Court does not review the decision of the magistrate court. *Id*. "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.'" *Id*. (quoting *State v. Korn,* 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009)).

Prior to *Losser*, when this Court reviewed a district court acting in its appellate capacity the standard of review was: "when reviewing a decision of the district court acting in its appellate capacity, this Court will review the record and the magistrate court's decision independently of, but with due regard for, the district court's decision." *Losser*, 145 Idaho at 672, 183 P.3d at 760. After *Losser*, this Court does not directly review a magistrate court's decision. *Id*. Rather, it is bound to affirm or reverse the district court's decision. *See Bailey*, 153 Idaho at 529, 284 P.3d at 973; *Korn,* 148 Idaho at 415 n.1, 224 P.3d at 482 n.1.

3

In this case, both Pedro and Bertha have misstated the standard of review that this Court applies to appeals from the district court acting in its appellate capacity. Both parties' arguments on appeal ask this court to directly review the decisions of the "trial court," which was the magistrate court in this case. This presents a potential problem because under *Losser* we are procedurally bound to focus our review on the decision of the district court. However, since the issues raised on appeal are primarily based on factual determinations made by the magistrate court and because under *Losser* we still review the magistrate record to determine whether substantial, competent evidence supports the challenged factual determinations of the magistrate, we will proceed to consider the appeal. Litigants who fail to properly comprehend the standard of review for an appeal from the district court should not assume that this will always be the case.

### B. The district court did not err in affirming the magistrate court's spousal maintenance award.

In its Memorandum Decision, the magistrate court ordered Pedro to pay Bertha spousal maintenance of $800 per month for seven years, commencing July 1, 2010, and $400 per month until Bertha reaches age sixty-two, an additional six years. The magistrate court found that spousal maintenance was warranted because even with an unequal distribution of the marital assets, Bertha would have a cash flow problem due to lack of employment, lack of English speaking skills, and limited employment history. The magistrate court stated that "Pedro, on the other hand, will have ongoing income around $50,000 per year plus benefits, a paid-for piece of real property and virtually no consumer debt."

The district court upheld the magistrate court's spousal maintenance award. The district court determined that the magistrate court had considered the relevant factors for awarding spousal maintenance, acted consistently with the legal standards, and reached its decision through an exercise of reason. Furthermore, the district court found that the magistrate's Memorandum Decision "was supported by substantial, competent evidence in the record and his conclusions follow from his findings."

Pedro argues on appeal that the magistrate court erred in making a spousal maintenance award because: (1) Pedro's alleged adultery should not have been considered in making the award; (2) the court abused its discretion by awarding Bertha spousal maintenance when she can support herself; and, (3) the spousal maintenance award was punitive rather than rehabilitative. Although Pedro argues that magistrate court erred in granting the award, we must review the district court's

affirmance.

### 1. A trial court may consider fault, including alleged adultery, in making an award of spousal maintenance.

Based on the factors in I.C. § 32-705, the magistrate court found that Bertha lacked sufficient income to support herself even with full time employment available to her. Specifically, the court considered Bertha's "lack of employment, lack of English speaking skills and limited recent employment history" before ordering that Pedro pay Bertha monthly spousal support. Additionally, in an unrelated portion of the Memorandum Decision addressing the "Grounds for Divorce," the magistrate judge stated "[c]ertainly, evidence was provided that gives the court high suspicion of adulterous behavior on the part of Pedro, which the court has considered when addressing spousal support."

On appeal to this Court, Pedro argues that the magistrate court erred as a matter of law by improperly considering his alleged adultery in making the maintenance award. Pedro argues that where a divorce is granted based on irreconcilable differences, the fault of either party should not be considered in awarding spousal maintenance. Additionally, Pedro argues that even if adultery could be considered in making a spousal maintenance award, it should not be in this case because Bertha failed to prove that he committed adultery by "very clear and conclusive" evidence.

Bertha contends that Pedro's adultery argument is without merit for two reasons. First, Pedro has not produced any case law, nor does any exist, which establishes that adultery should not be considered in making a spousal maintenance award where a divorce is predicated on irreconcilable differences. Second, Bertha argues that I.C. § 32-705 does not require that "fault" be proven by very clear and convincing evidence. Alternately, Bertha contends that even if Pedro's alleged adultery should not have been considered by the magistrate court, enough of the factors from I.C. § 32-705 remain satisfied to justify the maintenance award.

Pedro made precisely the same argument to the district court, which found that Pedro's argument lacked merit because the spousal maintenance statute, I.C. § 32-705, explicitly listed "fault" as a factor that may be considered in making a spousal maintenance award. The district court concluded that the magistrate judge had "substantial and competent evidence, coupled with his judgment of the credibility of the witnesses, upon which to find that both parties bore some fault in the disintegration of the marriage, but that Bertha was the more innocent of the two." Additionally, the district court concluded that even if fault had not been considered by the magistrate court, the remaining factors from I.C. § 32-705 supported the award.

5

Spousal maintenance awards are governed by I.C. § 32-705, which provides:

1. Where a divorce is decreed, the court may grant a maintenance order if it finds that the spouse seeking maintenance:
> (a) Lacks sufficient property to provide for his or her reasonable needs; and
> (b) Is unable to support himself or herself through employment.

2. The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include:
> (a) The financial resources of the spouse seeking maintenance, including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently;
> (b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment;
> (c) The duration of the marriage;
> (d) The age and the physical and emotional condition of the spouse seeking maintenance;
> (e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance;
> (f) The tax consequences to each spouse;
> (g) *The fault of either party*.

(Emphasis added). Fault is not a prerequisite to an award of spousal maintenance. *Tisdale v. Tisdale*, 127 Idaho 331, 334, 900 P.2d 807, 810 (Ct. App. 1995). However, it is one of the many factors that I.C. § 32-705 allows the trial court to consider in ordering an award of spousal maintenance. *Id.*; I.C. § 32-705(2)(g).

Pedro's claim that the court erred in considering his alleged adultery in granting spousal maintenance to Bertha is without merit. First, marital fault, which includes adultery, is one of the many factors that I.C. § 32-705 expressly allows a trial court to consider when making a spousal maintenance award. Second, nothing in the statutory language or this Court's previous interpretation of I.C. § 32-705 requires that fault be shown by "very clear and conclusive" evidence as Pedro suggests. It is clear from Pedro's briefing that in making his "very clear and conclusive" evidence argument he has confused the standard for showing "fault" with the standard for granting a divorce based on adultery. Pedro cites to *Brammer v. Brammer*, 93 Idaho 671, 471 P.2d 58 (1970), to support his claim that adultery may only be considered when it is proven by "very clear and conclusive" evidence. In *Brammer*, this Court stated, "it is a matter of public policy that divorces, especially on the ground of adultery, should be granted only upon very clear and conclusive evidence." *Id.* at 674, 471 P.2d at 61. Thus, *Brammer*'s "very clear and conclusive" standard is only warranted when proving adultery as the grounds for divorce, not for

6

showing "fault" under I.C. § 32-705. Furthermore, Pedro's alleged adultery is irrelevant in this appeal because the district court found that the spousal maintenance award in this case was warranted regardless of Pedro's fault because after the divorce "Bertha would not have sufficient property to provide for her reasonable needs and would be unable to support herself though employment."

### 2. The magistrate court did not abuse its discretion by granting Bertha spousal maintenance.

On appeal to this Court, Pedro argues that it was an abuse of discretion for the magistrate court to grant Bertha a spousal maintenance award because she did not meet the threshold requirements. The basis of Pedro's argument is that "[c]learly, Bertha can support herself through a combination of the property she received and through employment income." Furthermore, Pedro contends that based on Bertha's current circumstances she "can live on the $16,000 to $17,000 per year she can earn as" a minimum wage worker.

Bertha argues that the award of spousal maintenance is left to the sound discretion of the trial court. Furthermore, Bertha contends that without spousal maintenance, the marital property she received in the divorce is not sufficient under I.C. § 32-705(1)(a) to "provide for her needs according to the standard of living established during the marriage." Bertha also contends that the maintenance award was proper because under I.C. § 32-705(1)(b) the evidence showed that she would be unable to support herself otherwise.

Pedro made the same argument on appeal to the district court. Finding no merit in Pedro's argument, the district court upheld the spousal maintenance award. The district court recognized that perhaps Bertha could meagerly support herself though the sale of all her assets, teamed with her potential employment income. However, the district court found that whether a dependent spouse can merely support themselves is not the test to determine if spousal maintenance is warranted. Rather, the proper inquiry is whether spousal maintenance is necessary to support the dependent spouse's "standard of living established during the marriage." Because of the disparity in income between Pedro and Bertha, and the obvious decrease in Bertha's standard of living after the divorce, the district court found that the spousal maintenance award was proper.

"Whether to award spousal maintenance under [I.C. § 32-705] is discretionary and requires the court to give due consideration to each party's financial needs and abilities." *Stewart v. Stewart*, 143 Idaho 673, 679, 152 P.3d 544, 550 (2007). "[R]eview of a lower court's exercise of discretion is conducted under a three-tiered inquiry: '(1) whether the lower court rightly

7

perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.'" *Id*. at 678, 152 P.3d at 549 (quoting *Chandler v. Chandler*, 136 Idaho 246, 249, 32 P.3d 140, 143 (2001)).

The district court did not err in affirming the magistrate court's award of spousal maintenance because the magistrate court did not abuse its discretion in ordering the award. First, the magistrate court perceived the issue as being one of discretion—this is evident from the magistrate's Memorandum Decision. Second, the magistrate court, in ordering Pedro to pay Bertha spousal maintenance, acted within the outer bounds of its discretion and consistently with the law. The magistrate court recognized that spousal maintenance was governed by I.C. § 32-705 and proceeded to find that maintenance was warranted because, after the divorce, Bertha lacked sufficient income to provide for her reasonable needs or to support herself, even with full time employment. Third, the magistrate court reached its decision though an exercise of reason. Because the magistrate court did not abuse its discretion by ordering Pedro to pay spousal maintenance, it was not an error for the district court to affirm the magistrate court's order.

### 3.  The sum and duration of Bertha's spousal maintenance award did not amount to a punitive award.

As an alternative argument, Pedro contends that even if the magistrate court did not err by granting a spousal maintenance award, the amount and duration of the award was punitive rather than rehabilitative. Pedro argues that the thirteen-year award is "defective because it amounts to an award of permanent maintenance whereby Bertha has no incentive to get full time employment" and should be reversed or modified. Furthermore, Pedro argues that the award cannot be upheld because Bertha failed to "buttress her claims for spousal maintenance with a budget or enumeration of her expenses."

In response, Bertha argues that just because the magistrate court considered Pedro's alleged adulterous behavior does not make the spousal maintenance award punitive. Bertha further argues that it is clear from the Memorandum Decision that the spousal maintenance award was designed to fill the financial gap left after the parties' divorce, not to punish Pedro. Bertha contends that multiple factors from I.C. § 32-705(2) support affirming the duration of the maintenance award. First, pursuant to subsection (2)(a), Bertha argues that without spousal maintenance she would not be able to independently meet her own needs. Second, Bertha argues under subsection (2)(c) that the long duration of the parties' marriage—twenty-six years—warrants a substantial award. Third,

8

under subsection (2)(d), Bertha argues that the award was proper because her age, and physical and emotional condition demonstrate that her income potential is limited and will become increasingly limited as she ages. Lastly, Bertha argues that the award was proper because, under subsection (2)(e) Pedro will be able to support himself even in light of the spousal maintenance award.

In response to Pedro's argument that Bertha's spousal maintenance award was punitive, the district court stated:

> As for [the magistrate's] spousal maintenance award being punitive, rather than rehabilitative, given the disparity in income levels between Bertha and Pedro, Bertha's limited ability to speak English, her age, and her minimal prior work history, the award is hardly punitive to Pedro. Indeed, under the circumstances presented in the record, much less of an award to Bertha would have, for all intents and purposes, been akin to punishment for having supported her family by staying home. Even with the award, and her entry into the workforce, Bertha is left much lower on the economic scale than is Pedro.

"Under I.C. § 32-705(1), the trial court may grant support where the spouse seeking the award has shown that he or she (a) lacks sufficient property to provide for his or her reasonable needs; and (b) is unable to support himself or herself through employment. Reasonable needs, under Idaho law, account for the standard of living established during the marriage." *Stewart*, 143 Idaho at 680, 152 P.3d at 551. The duration of a spousal maintenance award should be determined through an analysis of the factors listed in I.C. § 32-705(2), which include "duration of the marriage; the age, physical condition, resources, and employability of the spouse seeking the award; the ability of the spouse from whom the award is sought to provide it; the fault of either party; and any tax consequences." *Id*. This Court "do[es] not expect mathematical precision in calculating to the dollar how much maintenance is required, nor must the record support a specific amount. There must simply be substantial and competent evidence which provides a basis for the amount awarded." *Wilson v. Wilson*, 131 Idaho 533, 536, 960 P.2d 1262, 1265 (1998).

The district court's holding that the magistrate's spousal maintenance award was not punitive is supported by the magistrate court's record. The magistrate judge, at a post-trial motion hearing stated that "the maintenance award was primarily based on need" and that "[t]he fault factor was a factor, but only that." No evidence indicates that the magistrate court awarded Bertha spousal maintenance in order to punish Pedro. Rather, the weight of the evidence supports the conclusion that Bertha was awarded spousal maintenance because she lacked sufficient property to support herself and was unable to support herself through employment.

9

In 2007, Pedro earned $48,675 and in 2008, he earned $50,980. The record indicates that Bertha only worked periodically in the warehouse of Wada Farms from 1997 to 2006. Bertha testified that her work with Wada consisted of planting and harvesting potatoes and working in the company's warehouse—labor that the magistrate recognized had "significant physical demands." While working at Wada Farms, Bertha earned approximately $4,000 in 2002, $7,262 in 2003, $13,120 in 2004, $15,503 in 2005, and $8,665 in 2006, before leaving to care for her grandchildren. Importantly, the magistrate court did not award Bertha indefinite support. Instead, the magistrate judge tied the length of his award—thirteen years—to the age at which Bertha will first be eligible for Social Security, sixty-two, a fact that this Court found very persuasive in *Stewart*. *See Stewart*, 143 Idaho at 680, 152 P.3d at 551 (upholding a twelve year spousal maintenance award that provided support to a dependent wife until she reached age sixty-two).

Furthermore, the magistrate court correctly considered factors from I.C. § 32-705(2) in order to set the amount and duration of the award. The magistrate noted that: (1) Bertha lacked English language skills; (2) was currently unemployed; (3) lacked any significant employment history; (4) had been married to Pedro for twenty-six years; and, (5) that Pedro would be able to meet his needs while helping to meet Bertha's. Lastly, the fact that Bertha did not provide the magistrate court with a budget or enumeration of her expenses is irrelevant because mathematical precision in calculating a spousal maintenance award is not required. The district court appropriately affirmed the magistrate's decision on this issue.

C.     **While the district court mistakenly assumed that Pedro's gross income for the purpose of child support payments was $49,000, such error did not affect Pedro's substantial rights.**

On appeal to this Court, Pedro argues that the magistrate court erred in setting his annual income for the purpose of child support payments at $49,000. Specifically, Pedro argues that the magistrate court erred when it included his overtime wages, $14,000 per year, in his gross income for the purposes of calculating his child support payment. He claims those overtime wages were voluntarily earned, and as such should have been excluded under section 6(a)(1)(ii) of the Idaho Child Support Guidelines (I.C.S.G.).

Bertha argues that Pedro's overtime income should not be deducted from his gross income for the purpose of calculating his child support payments, because he failed to provide the requisite evidence for income to be excepted under I.C.S.G. § 6(a)(1)(ii).

On appeal to the district court, Pedro made the same argument—that the magistrate court

erred in setting his annual income at $49,000 because $14,000 was from voluntary overtime work, and voluntary income should be excluded from his gross income for the purposes of calculating his child support payments under I.C.S.G. § 6(a)(1)(ii). The district court, believing that the magistrate court set Pedro's child support income at $49,000, found that substantial and competent evidence supported setting Pedro's annual child support income at $49,000.

The Idaho Child Support Guidelines define the term "Gross Income" as "income from any source, and includes, but is not limited to, income from salaries, wages, commissions, bonuses." I.C.S.G. § 6(a)(1)(i). However, income received from employment in excess of a forty hour week shall be excluded from gross income under the Guidelines if the party demonstrates and the Court finds that:

> (1) the excess employment is voluntary and not a condition of employment; and (2) the excess employment is in the nature of additional, part-time employment, or is employment compensable as overtime pay by the hour or fractions of the hour, and (3) the party's compensation structure has not been changed for the purpose of affecting a support or maintenance obligation, and (4) the party is otherwise paid for full time employment at least 48 weeks per year, and (5) child support payments are calculated based upon current income.

I.C.S.G. § 6(a)(1)(ii). The district court found that "Pedro offered none of this evidence" and only provided vague testimony that his overtime was voluntary, which was contradicted by other witnesses. As a result, the district court affirmed the magistrate's court's gross income calculation, which it mistakenly believed to be $49,000.

Although both parties represented to the district court that Pedro's gross income for the purpose of calculating child support was set by the magistrate at $49,000, the record shows that the magistrate court set Pedro's income at $45,000. As a maintenance worker at General Mills, Pedro earned an hourly wage of $16.23. Accordingly, Pedro's base annual income, working forty hours per week, was $35,000. However, because Pedro was also compensated for his overtime, his average annual wage for 2007 and 2008 was $49,000. At trial, Pedro attempted to show that the $14,000 per year that he received in overtime was voluntary and, as such, should not be part of his gross income for the purpose of calculating his child support payment.

The magistrate court record never expressly indicates whether I.C.S.G. § 6(a)(1)(ii) was invoked in order to exclude some portion of Pedro's overtime income. However, the Case Summary accompanying the Memorandum Decision expressly states that Pedro's "ICSG income" is $45,000. Additionally, at a post-trial motion hearing the magistrate judge indicated

11

that he had decreased Pedro's annual income under I.C.S.G. § 6(a)(1)(ii), stating:

> [T]his is one of those balancing situations where I see that the, the technical requirements of proving overtime potentially are, are -- involuntarily overtime are not met, but kind of overgirding [sic] that whole thing is that these are his average earnings. His average earnings are higher than that for a significant period… *So I, I sort of adjusted it downward from his average earnings taking, taking into consideration that, you know, he -- some of that was certainly voluntary, but he had -- a good chunk of that was voluntary as well*.

(Emphasis added). Based on the Case Summary and the magistrate judge's language, the record shows that Pedro's annual income for the purpose of child support was set at $45,000.

It is not entirely clear that the district court adopted the $49,000 income figure, but it is understandable that it might have done so. Both parties contended, incorrectly, that the magistrate had established the $49,000 figure. It appears that both parties were laboring under a misimpression as to what the magistrate had done and that this resulted in the district court's error. However, the error is harmless and of no import. *See* I.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.") The magistrate court found, and the district court agreed, that Pedro had failed to establish the amount of overtime that was strictly voluntary in nature and Pedro has not directly attacked the $555.74 per month support payment that the magistrate determined to be appropriate.

> **D.** **The district court did not err in affirming the magistrate court's grant of attorney fees to Bertha.**

In its Memorandum Decision, the magistrate court ordered Pedro to pay a portion of Bertha's attorney fees in an amount not exceeding $2,500. The magistrate court found that I.C. § 32-704(3) allowed it to apportion attorney fees to Bertha based on the parties' financial resources. The magistrate court cited to *Jensen v. Jensen*, 128 Idaho 600, 602, 917 P.2d 757, 759 (1996), to conclude that a disparity in income alone is sufficient to support a finding that the higher income spouse should pay a share of the other spouse's attorney fees.

The district court affirmed, finding that the magistrate court properly considered the relevant factors outlined in I.C. § 32-704(3), and that substantial and competent evidence of the disparity in income warranted saddling Pedro with a portion of Bertha's attorney fees.

On appeal to this Court, Pedro argues that the magistrate court abused its discretion by requiring that he pay a portion of Bertha's attorney fees. Pedro argues that the magistrate court abused its discretion for two reasons: (1) *Jensen* does not stand for the proposition that disparity in

income alone is sufficient to support a finding that the higher income spouse should pay the other party's attorney fees; and, (2) the magistrate court did not make any specific findings under I.C. § 32-704(3). Bertha contends that Pedro is incorrect on both grounds and that the magistrate court's award of attorney fees under I.C. § 32-704(3) was supported by the evidence and the law.

Idaho Code 32-704(3) provides:

> The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32-705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees.

"Section 32-705 sets forth a number of factors which the court must consider in determining whether to order a party to pay the costs and fees of the other party in a domestic relations matter." *Noble v. Fisher*, 126 Idaho 885, 891, 894 P.2d 118, 124 (1995). Relevant factors from I.C. § 32-705 include: "the financial resources of the spouse seeking [attorney fees], including the marital property apportioned to said spouse, and said spouse's ability to meet his or her needs independently." I.C. § 32-705(2)(a). "[I]n order for an appellate court to uphold a lower court's award of attorney fees pursuant to I.C. [§] 32-704, the lower court must have considered and cited factors listed in I.C. [§] 32-705 in its decision." *Jensen*, 128 Idaho at 606, 917 P.2d at 763 (citing *Noble*, 126 Idaho at 891, 894 P.2d at 124). "Unless the court's decision cites the legislative factors and demonstrates that such factors were considered, the award of attorney fees is subject to being reversed and remanded." *Id.*

In this case, the magistrate court extensively analyzed the factors listed in I.C. § 32-705, and cited to them prior to awarding Bertha attorney fees. The magistrate specifically considered: Bertha's inability to support herself, the longevity of the parties' marriage, and Bertha's limited English skills, age, and lack of employment history. The court also considered the fact that Pedro would be able to adequately care for himself in light of the spousal maintenance award. Because the magistrate court properly considered and cited to the factors listed in I.C. § 32-705, the district court did not err in affirming Bertha's award of attorney fees.

**E.      Bertha is entitled to attorney fees on appeal under I.C. § 12-121.**

Both parties argue that they are entitled to attorney fees on appeal under I.C. § 12-121. Pedro argues that he is entitled to attorney fees because Bertha cannot defend the magistrate court's ruling, which was full of obvious and prejudicial errors, without doing so in a frivolous manner. Conversely, Bertha believes that Pedro has pursued this appeal frivolously and

unreasonably by ignoring the rulings of both the magistrate court and the district court.

Under I.C. § 12-121, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party." I.C. § 12-121. "An award of attorney fees under [I.C.] § 12-121 is not a matter of right to the prevailing party." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). However, I.C. § 12-121 "permits the award of attorney[] fees to the prevailing party if the court determines the case was brought, pursued or defended frivolously, unreasonably or without foundation." *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 218–19, 177 P.3d 955, 965–66 (2008). When deciding whether attorney fees should be awarded under I.C. § 12-121, the "entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Michalk*, 148 Idaho at 235, 220 P.3d at 591.

In this case, Bertha is the prevailing party and we find that Pedro has pursued this appeal frivolously and without foundation. He has merely retreaded arguments made without success below. We are asked to second-guess decisions that were properly made by the magistrate judge and upheld by the district judge. Accordingly, Bertha is entitled to attorney fees under I.C. § 12-121.

## IV.
## CONCLUSION

The decision of the district court, acting in its appellate capacity, is affirmed. Additionally, Bertha, as the prevailing party, is entitled to attorney fees and costs on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.