## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 42516

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

ANDREW GARCIA,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, June 2015 Term

2015 Opinion No. 83

Filed: August 24, 2015

Stephen Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Gerald F. Schroeder, Senior District Judge. Hon. William Harrigfeld, Magistrate Judge.

The decision of the district court is <u>reversed</u> and the case is <u>remanded</u> for further proceedings consistent with this opinion.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellant.

Ada County Public Defender's Office, Boise, for respondent.

_____

### ON THE BRIEFS

HORTON, Justice.

This is a companion case to the case of *State v. Juarez*, Docket No. 42476. Andrew Garcia was ordered to make certain payments in a juvenile proceeding. After he failed to make those payments, the State filed a motion for contempt. The magistrate court dismissed the motion, concluding that it did not have jurisdiction because Garcia was over twenty-one and juvenile court jurisdiction was terminated by operation of Idaho Code section 20-507. The State appealed and the district court affirmed the magistrate court's order. The State appeals the decision of the district court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The genesis of this appeal is found in juvenile court proceedings against Garcia. On May 12, 2008, Garcia admitted to committing an offense that would have been a misdemeanor if he were an adult. He was ordered to pay court costs of $20.00. On April 28, 2009, after Garcia admitted to committing another offense and a probation violation, he was ordered to pay court

1

costs, probation fees, and community service fees. On May 10, 2010, Garcia admitted to committing another offense and was once again ordered to pay court costs and probation supervision fees.

On May 14, 2013, June 6, 2013, and June 7, 2013, when Garcia was twenty years old, the State filed identical motions for contempt in the three juvenile court cases.[1] The State alleged that as of December 20, 2012, Garcia owed a balance of $537.80 and that Garcia's last payment was made on March 3, 2010. A show cause hearing was scheduled for January 22, 2014. The magistrate judge opened the hearing with the following observations:

> Mr. Garcia is not here. However, Mr. Garcia is over the age of 21. This is a matter that is filed under JV contempt. The Supreme Court has ruled that the Court does not have any jurisdiction after the age of 21 on any matters, as far as the way I read that case.
>
> Where this was brought under JV number and not under a civil matter, I don't believe I can proceed forward. Therefore, I'm going to Rule 48 dismiss this due to the fact that I have lost jurisdiction under the JV number.

On January 27, 2014, the magistrate judge entered an order dismissing the State's motion for contempt.

The State asked the trial court to reconsider its decision. The court denied the motion without hearing and the State appealed to the district court. The district court affirmed, concluding, "[t]he issue presented in this case is the same as presented in In the Interest of Luis Juarez, Case No. JV-2002-1109, filed July 31, 2014, now on appeal to the Idaho Supreme Court. A copy of that opinion is attached and incorporated in this case with the same result." In *Juarez*, the district court affirmed the magistrate court's dismissal of the State's motion for contempt, concluding that the court lost jurisdiction once the former juvenile turned twenty-one. The district court reasoned that the court's jurisdiction was initially conveyed by operation of Idaho Code section 20-505 and then withdrawn by operation of Idaho Code section 20-507.

The State timely appealed from the district court's decision affirming the magistrate court's order dismissing the motion for contempt.

## II. STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its appellate capacity over a case from a magistrate court, this Court directly reviews the district court's decision. *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013). To determine whether the

---

[1] This opinion will refer to the identical motions for contempt as a single motion.

district court erred in affirming the decision of the juvenile court, this Court reviews the juvenile court's "record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Id.* at 858, 303 P.3d at 217 (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)).

> Additionally, "[t]his Court freely reviews the interpretation of a statute and its application to the facts." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 755, 203 P.3d 683, 685 (2009) (citing *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007)). "Whether a court lacks jurisdiction is a question of law . . . over which appellate courts exercise free review." *State v. Jones*, 140 Idaho 755, 757, 101 P.3d 699, 701 (2004) (citation omitted).

*State v. Doe*, 156 Idaho 243, 245, 322 P.3d 976, 978 (2014).

### III. ANALYSIS

The primary issue presented by this appeal is whether Idaho Code section 20-507 bars contempt proceedings against former juveniles who have turned twenty-one. However, before we reach that question, we address Garcia's claim that the district court's decision should be affirmed because the magistrate court lacked personal jurisdiction over him.

### A. The juvenile court had personal jurisdiction over Garcia.

Garcia contends that Idaho Code section 20-507 stripped the trial court of personal jurisdiction over him and therefore the magistrate court correctly dismissed the State's motion for contempt. The State responds that Garcia's unqualified appearance before the court resulted in the waiver of any claim that the court lacked personal jurisdiction.

"In order to properly proceed," against a defendant, a court requires "both personal and subject-matter jurisdiction . . . ." *State v. Rogers*, 140 Idaho 223, 228, 91 P.3d 1127, 1132 (2004). The distinction between personal and subject-matter jurisdiction is important because parties cannot waive subject-matter jurisdiction, and it may be raised at any time, while personal jurisdiction may be waived. *Id.* at 227, 91 P.3d at 1131.

> Personal jurisdiction refers to the court's authority to adjudicate the claim as to the person. That a court has "jurisdiction of a party" means either that a party has appeared generally and submitted to the jurisdiction, has otherwise waived service of process, or that process has properly issued and been served on such party.

*Hooper v. State*, 150 Idaho 497, 500, 248 P.3d 748, 751 (2011) (quoting *Rogers*, 140 Idaho at 227, 91 P.3d at 1131). Thus, courts acquire personal jurisdiction when the defendant initially

appears before the court on a complaint or indictment. *Rogers*, 140 Idaho at 228, 91 P.3d at 1132. Here, when Garcia appeared before the magistrate court to answer the allegations in the juvenile proceedings, the court acquired the personal jurisdiction over him that was needed to enter valid orders that could be enforced by contempt. *Andre v. Morrow*, 106 Idaho 455, 463, 680 P.2d 1355, 1363 (1984) (discussing Restatement (Second) of Conflict of Laws § 102 comment d (1971)).

A defect in subject matter jurisdiction, however, cannot be waived and may be raised at any time. *Rogers*, 140 Idaho at 227, 91 P.3d at 1131. This Court has explained subject matter jurisdiction as follows:

> "Jurisdiction over the subject matter" has been variously defined as referring to (1) the nature of the cause of action and of the relief sought; (2) the class of cases to which the particular one belongs and the nature of the cause of action and of the relief sought; (3) the power of a court to hear and determine cases of the general class to which the particular one belongs; (4) both the class of cases and the particular subject matter involved; and (5) the competency of the court to hear and decide the case. However, subject matter jurisdiction does not depend on the particular parties in the case or on the manner in which they have stated their claims, nor does it depend on the correctness of any decision made by the court. Also, the location of a transaction or controversy usually does not determine subject matter jurisdiction.

*Id.* at 227–28, 91 P.3d at 1131–32 (quoting 20 Am. Jur. 2d *Courts* § 70 (1995)); *see also Black's Law Dictionary* 931 (9th ed. 2009) (defining subject matter jurisdiction as "jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things.").

The central question in this case is one of subject matter jurisdiction. Idaho Code section 20-505 confers "exclusive, original jurisdiction" to the court over juveniles in cases involving alleged acts or omissions identified in the statute. In *Zamora v. State*, this Court considered a predecessor to Idaho Code section 20-505 when deciding whether the juvenile court had original jurisdiction in a case where a seventeen year old was charged with aggravated DUI and leaving the scene of an injury accident. 123 Idaho 192, 193–94, 846 P.2d 194, 195–96 (1992). As the alleged offenses were felonies, we concluded that the juvenile court had original jurisdiction over the offenses allegedly committed by the defendant. *Id.* at 194, 846 P.2d at 196. Although we did not explicitly distinguish whether the juvenile court's "exclusive, original jurisdiction" was personal or subject matter, our focus on the allegations against the defendant, rather than the defendant's relation to the court, clearly demonstrated that this Court was deciding a question of

subject matter jurisdiction. For this reason, we conclude that Garcia has incorrectly characterized the question before us as one of personal jurisdiction and we turn our attention to the question whether the trial court had subject matter jurisdiction to decide the State's motion for contempt.

**B. Idaho Code section 20-507 does not deprive the magistrate court of subject matter jurisdiction to decide a claim of contempt.**

To answer the question presented in this appeal, we must consider the source of the court's contempt powers. Garcia contends that the trial court had no jurisdiction to consider the State's motion for contempt under the Juvenile Corrections Act (JCA). The State responds that the court has subject matter jurisdiction arising from the inherent contempt powers of every court.

The JCA confers "exclusive, original jurisdiction" on the court "over any juvenile and over any adult who was a juvenile at the time of any act, omission or status . . . ." I.C. § 20-505. A "juvenile" is "a person less than eighteen (18) years of age or who was less than eighteen (18) years of age at the time of any alleged act, omission or status." I.C. § 20-502(10). Idaho Code section 20-505 applies "[w]here the act or omission occurs in the state of Idaho and is a violation of any federal, state, local or municipal law or ordinance which would be a crime if committed by an adult . . . ."[2]

---

[2] Idaho Code section 20-505 provides in full:

> Subject to the prior jurisdiction of the United States, the court shall have exclusive, original jurisdiction over any juvenile and over any adult who was a juvenile at the time of any act, omission or status, in the county in which the juvenile resides, or in the county in which the act, omission or status allegedly took place, in the following cases:
>
> (1) Where the act, omission or status occurs in the state of Idaho and is prohibited by federal, state, local or municipal law or ordinance by reason of minority only;
>
> (2) Where the act or omission occurs in the state of Idaho and is a violation of any federal, state, local or municipal law or ordinance which would be a crime if committed by an adult;
>
> (3) Concerning any juvenile where the juvenile comes under the purview of the interstate compact for juveniles as set forth in chapter 19, title 16, Idaho Code;
>
> (4) This chapter shall not apply to juvenile violators of beer, wine or other alcohol and tobacco laws; except that a juvenile violator under the age of eighteen (18) years at the time of the violation may, at the discretion of the court, be treated under the provisions of this chapter;
>
> (5) This chapter shall not apply to the juvenile offenders who are transferred for criminal prosecution as an adult, as provided in this chapter;
>
> (6) This chapter shall not apply to juvenile violators of traffic, watercraft, fish and game, failure to obey a misdemeanor citation and criminal contempt laws; except that a juvenile violator under the age of eighteen (18) years at the time of such violation may, at the discretion of the court, be treated under the provisions of this chapter;

5

The State brought the contempt motion pursuant to Idaho Criminal Rule 42.[3] Idaho Criminal Rule 42 governs contempt proceedings that may result in imposition of both civil and contempt sanctions. Clearly, Idaho Code section 20-505 does not apply in cases in which a civil contempt sanction is sought under the rule. Likewise, it does not apply when a criminal sanction is sought. Although we have adopted the statute of limitations applicable to misdemeanor actions for criminal contempt proceedings, *Charney v. Charney*, No. 42165, 2015 WL 3858528, at *6 (Idaho June 23, 2015), such proceedings, whether brought under Idaho Rule of Civil Procedure 75 or Idaho Criminal Rule 42, are not prosecutions for violations of Idaho's criminal contempt statute, Idaho Code section 18-1801.[4] Such criminal contempt proceedings are not predicated upon the violation of a statute; rather, they are predicated upon the violation of a court order or decree. Therefore, the original exclusive jurisdiction of the juvenile court under Idaho Code section 20-505 is not implicated.

This is significant because Idaho Code section 20-507 relates to termination of the court's jurisdiction obtained by operation of Idaho Code section 20-505. Idaho Code section 20-507 provides:

> Jurisdiction obtained by the court in the case of a juvenile offender *shall be retained by it for the purposes of this act until he becomes twenty-one (21) years of age*, unless terminated prior thereto. If a juvenile offender under the jurisdiction of the court and after attaining eighteen (18) years of age, is charged with a felony, he shall be treated as any other adult offender. If a person eighteen (18) years of age or older already under court jurisdiction is convicted of a felony, that conviction shall terminate the jurisdiction of the court, provided however, nothing herein contained shall prohibit any court from proceeding as provided in section 20-508(2), Idaho Code.

The State acknowledges that this statute terminates the juvenile court's jurisdiction under the JCA upon the juvenile's twenty-first birthday. However, the State argues that because Idaho Code section 20-507 provides that the juvenile court shall retain jurisdiction "for the purposes of this act until he becomes twenty-one," and since courts' contempt powers do not arise under the JCA, Idaho Code section 20-507 did not deprive the juvenile court of jurisdiction to determine whether Garcia should be punished for the alleged contempt. Garcia argues that any contempt

---

(7) This chapter shall not apply to juvenile sex offenders who violate the provisions of section 18-8414, Idaho Code.

[3] Idaho Criminal Rule 42 applies in actions filed under the JCA. I.J.R. 21.

[4] A criminal action for violation of Idaho Code section 18-1801 is not governed by the JCA unless the trial court exercises its discretion to apply the provisions of the JCA to a juvenile who was under the age of eighteen at the time of the act or omission constituting contempt. I.C. § 20-505(6).

allegation arising from a claimed failure to comply with the terms and orders of the juvenile court would arise from the JCA and thus fall within the "purposes of" the JCA as provided by Idaho Code section 20-507.

Garcia's contention is incorrect. As discussed above, Idaho Code section 20-505 does not provide the jurisdictional basis for the court's exercise of contempt powers. The plain meaning of Idaho Code section 20-507 is that it provides for termination of the court's jurisdiction under the JCA. "Jurisdiction obtained by the court in the case of a juvenile offender shall be retained by it *for the purposes of this act* until he becomes twenty-one (21) years of age, unless terminated prior thereto." I.C. § 20-507. The statute plainly provides that jurisdiction ends only "for the purposes of this act."

Although a contempt proceeding in a criminal case "often depends for its foundation on the proceedings in the underlying action," "[c]riminal contempt proceedings are generally independent of the cause of action out of which the alleged contempt arose." 17 C.J.S. *Contempt* § 89 (2015). Idaho Criminal Rule 42 applies to contempt proceedings brought "in connection with criminal proceedings" and requires the initiation of contempt *proceedings*. *See* I.C.R. 42(b),(c). Thus, an alleged contempt is the subject of a proceeding distinct from the underlying juvenile action. For this reason, the district court erred when it concluded that the juvenile court had jurisdiction "conveyed by operation of I.C. § 20-505" that was "subsequently withdrawn by operation of I.C. § 20-507" when Garcia turned twenty-one.

The district court applied our holding in *State v. Doe*, 147 Idaho 326, 208 P.3d 730 (2009) (*Doe 2009*). There, we held that the juvenile court lost jurisdiction over a juvenile charged with a probation violation when he turned twenty-one. *Id*. at 330, 208 P.3d at 737. However, in *Doe 2009*, we emphasized that the juvenile court's jurisdiction attached by operation of Idaho Code section 20-505. *Id*. at 328, 208 P.3d at 735. Our conclusion that the juvenile court lost jurisdiction in *Doe 2009* was based upon the court's exclusive jurisdiction under the JCA, which extended to the probation violation.

The juvenile court's authority to adjudicate the claimed contempt does not derive from its jurisdiction under the JCA; rather, it derives from the inherent powers of the court. Every court of this state, is vested with the power of contempt in order to compel obedience to its orders. As we explained in *Marks v. Vehlow*, 105 Idaho 560, 566, 671 P.2d 473, 479 (1983), "[t]o vindicate his jurisdiction and proper function, the magistrate is vested with the judicial contempt power.

7

While this power has been recognized by statute . . . its source lies in the Constitution, ID Const. art. 5 § 2, and the common law, *McDougall v. Sheridan*, 23 Idaho 191, 128 P. 954 (1913)." While Idaho Code sections 1-1603 and 1-1902 recognize the courts' contempt power, these statutes are recognizing "the inherent common law contempt power." *Marks*, 105 Idaho at 566, 671 P.2d at 479; *In re Williams*, 120 Idaho 473, 492, 817 P.2d 139, 158 (1991) (explaining that "the Legislature may not be free to limit the inherent power of constitutional courts to punish contempts"); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Young v. United States*, 481 U.S. 787, 796 (1987) ("The ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority without complete dependence on other Branches.").

"[P]ublic policy dictates that a party must obey an express order of the court. Courts have the contempt power in order to preserve their effectiveness and sustain their *inherent and statutory power*." *In re Weick*, 142 Idaho 275, 279, 127 P.3d 178, 182 (2005). Even when an action is no longer pending, "a court may consider criminal contempt as a collateral issue." *Id.* at 278, 127 P.3d at 181. (citing *Inland Grp. of Cos., Inc. v. Obendorff*, 131 Idaho 473, 475, 959 P.2d 454, 456 (1998) ("issues such as costs, attorney fees, contempts, and Rule 11 sanctions can be determined by a court after the principal suit has been terminated")). "The Legislature has not the authority to restrict the inherent power of the court to punish for contempts, and it cannot abridge such power . . . ." *McDougall*, 23 Idaho at 191, 128 P. at 954. The inherent contempt powers of the courts cannot be circumvented and are necessary "[t]o vindicate his jurisdiction and proper function . . . ." *Marks*, 105 Idaho at 566, 671 P.2d at 479.

As the trial court possessed the inherent power to adjudicate Garcia's alleged contempt, it incorrectly dismissed the State's motion for contempt for lack of jurisdiction. We therefore reverse the district court's decision affirming the magistrate court's decision and remand this case for further proceedings consistent with this opinion.

## C. Garcia may assert time-based defenses in the proceedings on remand.

Although we conclude that Idaho Code section 20-507 has no application to this contempt proceeding, for guidance on remand, we believe that it is appropriate to address a

subject that has not been raised as an issue on appeal: whether Garcia may present any other defense based upon the passage of time.[5]

Although the State has attempted to characterize this as a civil contempt proceeding, the State's motion did not identify the sanctions that it sought to be imposed. "When sanctions are imposed to punish the contemnor for past acts, the contempt is criminal; when sanctions are imposed for compensatory or coercive reasons, the contempt is civil in nature." *Camp v. E. Fork Ditch Co.*, 137 Idaho 850, 862, 55 P.3d 304, 316 (2002) (quoting *In re Williams*, 120 Idaho at 480, 817 P.2d at 146).

On remand, the threshold issue to be addressed is the nature of the sanction that the State seeks to have the trial court impose. This is necessary to define the procedural protections (e.g., burden of proof) to which Garcia is entitled.

If the State seeks criminal sanctions, Garcia would be entitled to advance a defense based upon the one-year statute of limitations provided by Idaho Code section 19-403(1). *Charney v. Charney*, No. 42165, 2015 WL 3858528, at *6 (June 23, 2015).

If the State seeks civil sanctions, Garcia would likewise be entitled to present a defense based upon the passage of time. There is no statute of limitations that applies to civil contempt proceedings. *State v. Schorzman*, 129 Idaho 313, 315, 924 P.2d 214, 216 (1996). We deem it appropriate to provide limited relief to alleged contemnors for stale claims of contempt. We therefore hold that laches is a defense available to alleged contemnors in cases where civil contempt sanctions are sought.

The defense of laches is traditionally stated as follows:

> The necessary elements to maintain a defense of laches are: (1) defendant's invasion of plaintiff's rights; (2) delay in asserting plaintiff's rights, the plaintiff having had notice and an opportunity to institute a suit; (3) lack of knowledge by the defendant that plaintiff would assert his rights; and (4) injury or prejudice to the defendant in the event relief is accorded to plaintiff or the suit is not held to be barred.

*Henderson v. Smith*, 128 Idaho 444, 449, 915 P.2d 6, 11 (1996) (quoting *State Dep't of Health & Welfare v. Annen*, 126 Idaho 691, 692–93, 889 P.2d 720, 721–22 (1995)).

Clearly, some modification of this formulation is necessary to address civil contempt proceedings. Thus, we hold that the elements of the defense of laches in a civil contempt

---

[5] Although we are addressing an issue not addressed by the parties, we do so to provide statewide guidance to judges and litigants in cases involving civil contempt proceedings. We do not intend to suggest an opinion as to whether Garcia is, or is not, entitled to prevail upon a defense of laches in this particular case.

proceedings are: (1) A delay between the moving party knowing, or having reason to know, of the act or omission alleged to be contempt and the moving party's commencement of non-summary contempt proceedings; (2) the alleged contemnor's lack of knowledge that the moving party would commence non-summary contempt proceedings; and (3) injury or prejudice to the alleged contemnor in the event civil contempt sanctions are imposed.

As with the usual defense of laches, this is an affirmative defense and the alleged contemnor bears the burden of proof. *Thomas v. Arkoosh Produce, Inc.*, 137 Idaho 352, 359, 48 P.3d 1241, 1248 (2002). Whether the defense of laches applies in a particular case is primarily a question of fact for the trial court. *Huppert v. Wolford*, 91 Idaho 249, 257, 420 P.2d 11, 19 (1966). "Lapse of time, although an important element, is not, standing alone, to be considered as controlling in determining the applicability of the defense of laches." *Finucane v. Village of Hayden*, 86 Idaho 199, 206, 384 P.2d 236, 240 (1963). Thus, the central question for a trial court in determining if the defense of laches is appropriate is the prejudice to the alleged contemnor caused by the moving party's delay.

## IV. CONCLUSION

We reverse the decision of the district court affirming the magistrate court's dismissal of the State's motion for contempt. We remand for proceedings consistent with this opinion.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES, **CONCUR**.